UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| JOHN DOE<br>*Plaintiff,*<br><br><br>v.<br><br><br>TORRINGTON BOARD OF EDUCATION<br>CHERYL KLOCZKO, JOANNE CREEDON<br>CHARLES MCSPIRIT, DANIEL DUNAJ<br>JOHANNAH DEZURIK, GERALD CARBONE<br>and JAMES DZIEKAN<br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION NO.

MARCH 27, 2015

## COMPLAINT

This is an action for damages based on the denial of an equal educational opportunity and violation of John Doe's civil rights pursuant to 42 U.S.C. §§ 1983, Section 504 of the Rehabilitation Act ("Section 504"), Title II of the Americans with Disabilities Act ("ADA"), Title IX of the Higher Education Act of 1965 ("Title IX"), and various state laws.

This case involves the culture of harassment and violence created by staff and administrators when they acted with deliberate indifference towards the bodily integrity and safety of John Doe, dismissing severe physical, emotional and psychological harm caused to John by student-athletes as "horseplay" and "boys being boys," and claiming John Doe was "embellishing" and being too "sensitive." This all occurred in a violent and entitled culture of a

football team that had resulted in the rape of three female students. Administrators expelled the perpetrators after reports of those rapes were made public.

Administrators' responses to the Does pleas for assistance, however, reflected their discriminatory animus, and the perpetrators were emboldened to escalate their harassment and assaults against the plaintiff.  It is within this environment that John Doe was sexually assaulted by a student-athlete on the football team, and thereafter traumatized on a nearly daily basis by him and other student-athletes within the school.

## PARTIES

1.      The Plaintiff, John Doe, ("Plaintiff") is a citizen of the United States residing in the State of Connecticut.

2.      The Defendant, the Torrington Board of Education, is a Board of Education established pursuant to Connecticut General Statutes §10-240 *et seq.*, that operates and maintains Torrington Public Schools, including Torrington High School.  The school board has a principal place of business at 355 Migeon Avenue, Torrington, CT 06790 and is a place of public accommodation as defined by Conn. Gen Stat. §46a-63.

3.      At all times relevant to this complaint, the defendant Cheryl Kloczko ("Kloczko") was a resident of the state of Connecticut and was employed by the Torrington Board of Education as Superintendent of Schools. As Superintendent, Kloczko was the individual primarily responsible for and/or supervising others who were responsible for formulating and implementing policies and ensuring that the Board followed the law, including, but not limited to, equal access to education and equal treatment for all students, and was the ultimate authority and decision-maker of the Board.  Kloczko personally directed actions that she knew or should

have known violated John Doe's rights under the United States Constitution, federal and state law. She is being sued in her individual and official capacity.

4.     At all times relevant to this complaint, the defendant Joanne R. Creedon ("Creedon") was a resident of the state of Connecticut and was employed by the Torrington Board of Education as Principal at Torrington High School.  As Principal, Creedon had the responsibility and authority to oversee the welfare of the students, and had immediate responsibility for the implementation of policies and procedures governing the schools.  Creedon personally participated in and/or directed actions that he knew or should have known violated John Doe's rights under the United States Constitution, federal law, and state law.

5.     At all times relevant to this complaint, the defendant Charles McSpirit ("McSpirit") was a resident of the state of Connecticut and was employed by the Torrington Board of Education as Vice Principal at Torrington High School.  As Vice Principal, McSpirit had the responsibility and authority to oversee the welfare of the students, to investigate incidents of misbehavior and to discipline students.  McSpirit personally participated in and/or directed actions that he knew or should have known violated John Doe's rights under the United States Constitution, federal law, and state law.

6.     At all relevant times to this complaint, the defendant Michael McKenna ("McKenna") was a resident of the state of Connecticut and was employed by the Torrington Board of Education as Athletic Director at Torrington High School.  As Athletic Director, McKenna had the responsibility of overseeing the sports programs at Torrington High School, to draft and implement policies and procedures related to discipline of student athletes, and to draft and implement policies to ensure the safety and well-being of each of his players.  McKenna

3

personally participated in and/or directed actions that he knew or should have known violated John Doe's rights under the United States Constitution, federal law, and state law.

7.     At all relevant times to this complaint, the defendant Dan Dunaj ("Dunaj") was a resident of the state of Connecticut and was employed by the Torrington Board of Education as Head Football Coach at Torrington High School.  As Head Football Coach, Dunaj had the responsibility of overseeing an interscholastic athletic team to ensure the safety and well-being of each of his players.  Dunaj personally participated in and/or directed actions that he knew or should have known violated John Doe's rights under the United States Constitution, federal law, and state law.

8.     At all times relevant to this complaint, the defendant Johanna DeZurik ("DeZurik") was employed by the Torrington Board of Education as a guidance counselor at Torrington High School.  As a guidance counselor, DeZurik had the responsibility of providing assistance, planning, and support for students for all areas of school as part of a comprehensive school program.  DeZurik through her actions and inactions participated in actions that she knew or should have known violated John Doe's rights under the United States Constitution, federal law, and state law and prevented John Doe from enjoying an equal opportunity to access his free and appropriate education.

9.     At all times relevant to this complaint, the defendant Gerald Carbone ("Carbone") was a resident of the state of Connecticut and was employed by the Torrington Board of Education as a special education teacher and special education case manager for John Doe.  As special education case manager for John Doe, Carbone was responsible for checking on John Doe's educational and social progress at school as well as scheduling PPTs and performing other administrative tasks related to special education services provided to John Doe.  Carbone

personally participated in actions that he knew or should have known violated John Doe's rights under the United States Constitution, federal law, and state law and prevented John Doe from enjoying an equal opportunity to access a free and appropriate education.

10.     At all times relevant to this complaint, the defendant James Dziekan ("Dziekan") was employed by the Torrington Board of Education as a school social worker assigned to counsel John Doe.  Through his action and inaction, Dziekan prevented John Doe from enjoying an equal opportunity to access a free and appropriate education.

**JURISDICTION AND VENUE**

11.     Jurisdiction of this court is invoked under the provisions of Sections 1331 and 1343(3) of Title 28 and Sections 1983 and 1988 of Title 42 of the United States Code, and Section 12131 of Title 42 of the United States Code.

12.     Pursuant to Section 1367(a) of Title 28, this court has pendant jurisdiction over the plaintiffs' state law claims for violations of Connecticut state and common law.

13.     Venue properly lies in this judicial district pursuant to Section 1391 of Title 28 of the United States Code as the claims arose in this judicial district.

**FACTS**

14.     The Plaintiff attended Torrington High School from August, 2011 until April 5, 2013.  He thereafter attended an Alternative Educational Opportunity that consisted of 3 hours of tutoring at the Torrington Board of Education office beginning April 23, 2013 through July 2013.

15.     The Plaintiff was at all relevant times diagnosed with a Learning Disability and Other Health Impairment qualifying him for services and accommodations under the Individuals with Disabilities Education Act ("IDEA") and Section 504 of the Rehabilitation Act ("Section 504").

16.     The Plaintiff suffered severe and ongoing physical assault, sexual harassment including sexual assault, disability discrimination, and retaliation by students and/or staff in a continuing course of conduct from October, 2011 through the end of his sophomore year in June, 2013.

17.     In or around August, 2011, the Plaintiff joined the Torrington High School Football Team, then under the management of Head Coach Dan Dunaj.

18.     In or around October of 2011, the Plaintiff was physically assaulted in the locker room of Torrington High School.  The Plaintiff was thrown down on the ground by Student A, causing his glasses to be broken. Student A then took the Plaintiff's hat and rubbed it on Student A's genitals.

19.     The Plaintiff reported the assault to the Defendant, which suspended Student A for fewer than ten days.  The Plaintiff was assured that his disclosure to school officials would remain private, however, students and staff on the football team learned that the Plaintiff had informed school officials of the incident and began to retaliate against him.  This created the beginning of an ongoing pattern of bullying, physical assault, sexual harassment, disability discrimination, and retaliation by students and staff.

20.     In or about late October or early November, 2011, the Plaintiff was assaulted and harassed by Student B, a player on the football team, who tackled him and said he wanted to fight him.

21.     In or around November, 2011, two student-athletes on the football team, Students W and Student X[1], were arrested for charges of rape.  Their victims were female.  Student X

---

[1] Although multiple newspapers printed the name of these students, they were minors at the time of the conduct and so their names are not included here.  Plaintiff has assigned letters at the end of the alphabet to differentiate them from students (Students A though F) whose behavior was directed at John Doe.

pleaded guilty to risk of injury to a minor with illicit sexual contact.  Upon information and belief, both were expelled from Torrington High School for one year following their arrests.

22.     In or around January, 2012, the Plaintiff sustained a significant injury that limited his ability to practice and play football.  He was ridiculed both by coaches and students, and called a "pussy," "bitch," and "baby."  The football coaches, led by Dunaj, participated in, encouraged, and condoned this harassment.

23.     In or around spring of 2012, the Plaintiff participated in both the track and football programs at Torrington High School.  The Plaintiff was participating in track practice when he was thrown down on the ground by Student C, a member of both the track and football teams.  Student C then threw rocks in his face, one of which the Plaintiff swallowed when it got into his mouth.

24.     From that point until the end of his freshman year, the Plaintiff was assaulted by Student B or C, or other students nearly every day.

25.     In March 2012, Student Y, the Most Valuable Player ("MVP") on the Torrington High School Football Team from the 2011-2012 academic year, was charged with felony robbery related to jumping three fourteen-year-old juvenile boys.  At least one other co-conspirator, Student Z, was a Torrington High School football player.  Student Z graduated after the 2011-2012 season.  Student Y was permitted to play his senior year in the fall of 2012.

26.     Student Y later was arrested for the sexual assault of two 13-year-old females.

27.     In the spring of 2012, the Plaintiff was physically assaulted by Student D, a player on the football team, who hit him on the back of the neck in a "karate chop."  The Plaintiff then defended himself by executing the same on Student D.  The school punished both students with In-School Suspension ("ISS").

28.     Coach Dunaj then informed the team, in violation of the Family Educational Rights and Privacy Act, that the Plaintiff received ISS.  He disciplined the entire team for the Plaintiff's ISS by forcing all players to run "gassers," or a series of sprinting exercises.

29.     Coach Dunaj and his assistant coaches were aware that the policy of requiring the entire team to run gassers as a result of one student's discipline would encourage players to retaliate within the team.  In fact, the purpose of the policy was to hold members of the team "accountable" to each other through the threat of retaliation.

30.     The actions and inactions of the coach in failing to properly respond to and discipline the perpetrators regarding escalating incidents of bullying resulted in more physical assaults on the Plaintiff.

31.     Students B and E, along with other members of the football team, then sought out the Plaintiff after practice and retaliated against him by repeatedly striking him on the neck.

32.     In or about August 2012, several students were playing football in a park, including the Plaintiff. Student B then came to the park with several other Torrington High School Students.  After the students playing football left the park, Students B, in the presence of several other students, committed a sexual assault on the Plaintiff.

33.     Because prior reports were not handled properly by staff and coaches, and because coaching staff perpetrated, condoned, and acquiesced to retaliation between team members, the Plaintiff did not feel safe to report the incident to anyone after it occurred.

34.     Starting in the fall of 2012, the Plaintiff was harassed repeatedly in a class, including but not limited to being called a "faggot" and "fat ass" during class by several students. The teacher heard the harassment and failed to discipline the other students.

35.     In the fall of 2012, the Defendants were informed of other significant and severe acts of hazing, harassment, physical assault and sexual assault among players on the football team.   Upon information and belief, the Defendants were made aware that a student was sodomized in the locker room and had items forced into his mouth, causing injuries.

36.     Upon information and belief, the parent of the victim was asked by either the superintendent or the police not to report the incident to the police.

37.     At that time, upon information and belief, the Defendants were made aware that three other incidents of bullying and assault had occurred.

38.     Upon information and belief, the Defendants were informed that during a prior season, a football player was reportedly hazed where a pencil eraser was placed in his anus.

39.     Upon information and belief, the Defendants were further informed that, during the 2012-2013 season, an upper classman reportedly grabbed the genitalia of a freshman while he had an "icy-hot cream" substance in his hand.

40.     Upon information and belief, the Defendants were further informed that, during the 2012-2013 season, a freshman football player was reportedly forced to suck the toe of a senior football player.

41.     Upon information and belief, four students were each suspended for five days from school, and were suspended from playing two Torrington Football games, although it is unclear who was disciplined and which report gave rise to the discipline.

42.     Upon information and belief, the students were not disciplined any further because any more time could have cost them their college scholarships.

43.     Defendant failed to implement procedures to address harassment and bullying within the schools despite their responsibility to do so under Connecticut General Statutes

Section 10-222h. After each report of hazing, harassment, bullying, physical assault and sexual assault, the Defendant continued in its failure to properly respond, creating an atmosphere that condoned, encouraged, and acquiesced to the actions of the perpetrators.

44.     On or about September 12, 2012, Johanna DeZurik, School Counselor, left a voicemail on Jane Doe's cellphone indicating the Defendant was aware of harassment against the Plaintiff after having a conversation with him, but that she would not take direct action because the Plaintiff declined to offer names.  DeZurik did not conduct any independent investigation into the matter.

45.     During the fall of 2012, the Plaintiff began to stay home from school out of fear for his physical safety and because of severe anxiety related to the bullying that was occurring at school.  He was absent numerous days and his grades began to drop.

46.     On or about November 12, 2012, the Defendant convened a Planning and Placement Team ("PPT") meeting at the request of Jane Doe to address, inter alia, severe and ongoing patterns of bullying, sexual harassment, and retaliation by students and the impact of this bullying on the Plaintiff.

47.     Gerry Carbone, Special Education Case Manager, became visibly agitated with the Plaintiff because he was afraid to name the students that were harassing him.  Carbone stated, "I am sick of hearing about phantom bullies." Carbone did not conduct any investigation regarding the Plaintiff's claims.

48.     The Defendant reluctantly provided names of some of the perpetrators.

49.     On or about January 18, 2013, the Defendant convened a PPT meeting at the request of Jane Doe to address, inter alia, severe and ongoing patterns of bullying, sexual harassment, and retaliation by students and the impact of this bullying on the Plaintiff.

10

50.     The Plaintiff's private counselor attended this meeting to express her concerns regarding the harassment that was occurring and the lack of response by the school.

51.     At this meeting, DeZurik, McSpirit and Carbone minimized the harassment, referring to it as "everyday banter between the boys, back and forth."  The Team offered that the Plaintiff would receive thirty (30) minutes of counseling each week with James Dziekan, School Social Worker, to help him learn certain skills to assist him in dealing with issues related to his peers because of his "sensitivity."   The school also planned that the Plaintiff could leave his resource study hall early to avoid being harassed for his status as a student in need of special education services.

52.     The Plaintiff signed a release on September 13, 2012 to allow the school social worker to communicate with his private counselor regarding the harassment. Dziekan never contacted the outside counselor despite Jane Doe's request that he do so.

53.     On February 20, 2013 and February 22, 2013, two members of the Torrington High School Football Team were arrested on charges of felony sexual assault of two 13-year old females.  Those two members of the football team (unrelated to Students A-F in this case) were expelled from Torrington High School for one year.   Both later pleaded guilty to charges associated with their arrest.

54.     Following the students' arrests, students, including student-athletes, bullied the 13 year-old victim on social media.

55.     On or about March 17, 2013, Jane Doe attended an attendance appeal meeting to address attendance issues in the class in which John Doe was bullied.  At this meeting, Jane Doe pleaded for help to end the bullying and harassment so that the Plaintiff could return to school.

56.     On or about March 17, 2013, the Plaintiff was assaulted by Student F, who pushed him in the chest and said "What the fuck, gay boy".  This assault was unprovoked but the Plaintiff defended himself by pushing Student F away from him.  Teacher Eric Gamari witnessed the assault and dismissed it as mutual, taking no action to discipline Student F.

57.     On March 18, 2013, the Plaintiff refused to go to school because of the impact of the harassment and bullying and out of fear for his safety.

58.     On or about March 20, 2013, Jane Doe called Dziekan who informed her that he had not met with the Plaintiff as required by his IEP two months earlier.

59.     On the morning of April 1, 2013, the Plaintiff was in a resource study hall with Dorrette Murphy, Paraprofessional.  The Plaintiff was afraid when Murphy opened blinds in the room that allowed students passing in the hallway to see into the room.  The Plaintiff turned his desk to be shielded from view in order to avoid the ridicule of other students for requiring services for his special education needs.

60.     Murphy then taunted and harassed the Plaintiff stating, "What? Are you embarrassed? You should be embarrassed.  About the only thing you should be embarrassed about is yourself.  You are a hider."   That provoked other students to call Plaintiff a hider.  She then suggested that the other students get paint and write the Plaintiff's name on the window.

61.     The Plaintiff then asked what time it was and whether he could leave the class. Referring to the plan that the Plaintiff could leave the study hall early, she stated: "Who arranged that?  I wish I could leave 5 minutes early." She then stated to the rest of the class, "Don't you wish you could?"  When the Plaintiff responded that his Guidance Counselor had given him permission, Murphy stated: "we should all go to our Guidance Counselors so we can leave

early." Another teacher was in the class and upon information and belief, as disclosed by Carbone at a subsequent PPT Meeting, that teacher reported the incident to Carbone.

62. On another occasion, after the Plaintiff had missed significant time from his first period class due to his anxiety over bullying, Gamari asked, "Oh, you decided to get off your recliner and come here."

63. On the afternoon of April 1, 2013, the Plaintiff was at track practice when he was attacked by Student B and Student C. He was cornered and pushed against a fence, repeatedly punched and his shirt was ripped.

64. On April 2, 2013, Jane Doe informed Charles McSpirit, Vice Principal, of the April 1, 2013 incident. She brought the ripped shirt to the school and the Plaintiff disclosed the perpetrators names.

65. On or about April 2, 2013, Michael Tyler, Track Coach, called Jane Doe after having been informed of the incident. He stated that he believed the Plaintiff was "embellishing" his complaints of harassment.

66. On or about April 2, 2013, Vice Principal McSpirit refused to acknowledge the April 1, 2013 incident as bullying and dismissed the incident as mutual "horseplay."

67. Throughout the 2012-2013 school year, the Plaintiff participated as a Junior Cadet with the State Police Department. On or about April 4, 2013, the Plaintiff was asked by Trooper Steven Sordi, who acted as a mentor to him, how things were going at school. The Plaintiff broke down and disclosed to Trooper Sordi and Officer Jay Ulieano that he had been repeatedly harassed at the school and sexually assaulted the previous summer. The police began investigating the matter.

68.     On or about April 5, 2013, Coach Tyler informed the Plaintiff that he could not continue to participate on the track team because of his grades.  Another student, a runner with the ability to run very competitively, was not asked to leave the team, despite similarly poor grades.

69.     In removing the Plaintiff from the track team, the Defendant retaliated against the Defendant for asserting his right to be free from harassment, discrimination and physical assault based on his disability and gender.

70.     On April 5, 2013, the Plaintiff and Trooper Sordi disclosed to Jane Doe that the Plaintiff had suffered a sexual assault by Student B in the summer of 2012.  On that same date, Jane Doe removed the Plaintiff from school out of fear for his safety.

71.     On April 8, 2013, a PPT was held to address the April 1, 2013 incident.  Trooper Sordi attended the PPT and informed the Team that another incident had been disclosed by the Plaintiff and that the Plaintiff was going to be accompanied by him and Officer Ulieano after the meeting to file a report.  Trooper Sordi did not disclose the nature of the sexual assault to the school at that time.

72.     At that meeting, Trooper Sordi asked the PPT to create a safety plan.  McSpirit stated that he would review the students' schedules and make sure they didn't cross paths.  McSpirit did not propose any further safety measures, and the Plaintiff crossed paths with one of the students the next day.

73.     At that meeting, Jane Doe inquired of McSpirit whether Students B and C had been disciplined for their conduct in a manner that would prevent future assault and harassment.  McSpirit responded that Student C had been suspended off the track team.  When the Plaintiff's

mother further inquired, McSpirit acknowledged that Student C had been suspended from the track team due to his grades and not due to the April 1, 2013 assault on the Plaintiff.

74.     At that meeting, Carbone stated that Mr. Moulton confirmed to him that Murphy had made the noted statements to the Plaintiff.

75.     On or about April 17, 2013, Detective Tieman and Jane Doe disclosed to Superintendent of Schools Cheryl Kloczko the sexual assault by Student B and the history of bullying, physical assault, discrimination and harassment by Student B and others against the Plaintiff.

76.     At that meeting, Ms. Kloczko, Superintendent of Schools offered only that the Plaintiff be removed from school to receive three hours per day of tutoring at the Torrington Board of Education.  Jane Doe reluctantly agreed because she was presented with no alternatives, and she needed to ensure John Doe's safety.  The Plaintiff began tutoring on April 23, 2013.

77.     The program offered to the Plaintiff is the same program that is offered to students who are expelled.  As a result of this alternative education program the Plaintiff was treated as a student being disciplined rather than as a victim of discrimination, harassment, bullying, physical assault and sexual assault.

78.     In or about July, 2013, Jane Doe moved out of the Town of Torrington so that the Plaintiff could enroll in another school.

79.     On June 5, 2013, a PPT was held to address the Plaintiff's special education needs in light of the issues noted above.  At that meeting, the Defendant denied any incidents of bullying, harassment, or retaliation.

80.     On September 26, 2014, after trial, Student B was convicted related to the sexual assault of John Doe.  He was thereafter sentenced to six months served, with three years of probation.

81.     Each of the aforementioned incidents occurred in the context of a culture of sexual assault and violence by members of the Torrington High School football team.

## COUNT I

**Violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution through 42 U.S.C. § 1983
(Against Defendants Kloczko, Creedon, McSpirit, McKenna,
Dunaj, DeZurik, Carbone and Dziekan in their Individual Capacities)**

82.     The plaintiffs re-allege paragraphs 1 through 82 above and incorporate them herein by reference.

83.     Each and every act and omission alleged herein was done by the Defendants under the color and pretenses of the statutes, ordinances, regulations customs and usages of the State of Connecticut and in the rules, policies and direction of Torrington Public Schools, having been clothed with both actual and apparent authority by the governing body, the Board.

84.     Defendants failed to follow their own bullying prevention and intervention policies to ensure John Doe's safety.  These procedures set forth the minimum requirements of the school and do not require or involve the exercise of judgment on the part of the Defendants.

85.     Defendants knew that John Doe suffered from a Specific Learning Disability, which limited his ability to defend himself against his peers' abusive conduct.

86.     John Doe's right to bodily integrity and to be free from discrimination on the basis of his gender and Specific Learning Disability was clearly established at all relevant times to this Complaint.

87.     Defendants had a duty to exercise reasonable care to protect students at Torrington High School from cruel and abusive treatment by their peers.

88.     Defendants had a special relationship with John Doe in that John Doe was a student with a disability who was especially vulnerable to harassment, bullying and assault.

89.     Defendants failed to take steps to prevent the systemic harassment inflicted upon John Doe for over a year that was directed by and/or related to acts committed by Students A through Student F that were known to the Defendants.

90.     The violations of John Doe's bodily integrity and the violations of his right to be free from discrimination on the basis of his gender and disability were caused by affirmative acts by the Defendants.

91.     In some cases, Defendants, through their agents, actively encouraged students to bully and harass John Doe in violation of his rights to bodily integrity and his right to be free from discrimination on the basis of gender.

92.     The actions of John Doe's Harassers were condoned, encouraged and acquiesced to by Defendants, who responded with deliberate indifference and gross negligence towards John Doe in failing to properly investigate, prevent and/or punish his Harassers.

93.     By their failure to investigate, prevent and/or otherwise stop such conduct by John Doe's peers, the Defendants adopted and approved policies, practices and/or customs tolerating physical abuse and sexual assault.

94.     Defendants intentionally, willfully and without justification deprived John Doe of his rights, privileges and immunities secured to him by the Constitution and the laws of the United States, including but not limited to, his rights to due process and to be free from sexual abuse as provided by the Fourteenth Amendment of the Constitution and his right to privacy and

to be free from violations of bodily integrity as protected by the Fourth, Fifth, Ninth and Fourteenth Amendments of the Constitution, in violation of 42 U.S.C. § 1983.

95.     As a direct and proximate result of such deprivation, the plaintiff suffered and continues to suffer invasion of bodily integrity, physical injury, indignity, humiliation, severe emotional distress and mental anguish.

## COUNT II

### Violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution through 42 U.S.C. §1983
### (Against the Torrington Board of Education)

96.     The plaintiffs re-allege paragraphs 1 through 96 above and incorporate them herein by reference.

97.     The Board acted by and through its agents, including but not limited to Defendants Kloczko, McSpirit, Carbone, McKenna, Dunaj, DeZurik, Carbone and Dziekan.

98.     Defendants, after receiving allegations of abuse and unlawful conduct by John Doe's Harassers remained deliberately indifferent and tacitly authorized the continuation of their wrongful and criminal conduct.

99.     Defendant's failure to prevent or stop this abuse and wrongful and criminal conduct caused John Doe to suffer repeated verbal harassment and physical abuse.

100.    By its failure to properly train and supervise employees regarding the obligations noted above, Defendant adopted, approved and/or enforced a policy, practice and custom of tolerating the violation of constitutional rights.

101.    Defendant had a custom or policy of treating football players more favorably and with less scrutiny than other students.

102.    Defendants had a custom or policy of failing to disciple students whose assaults were made against male students on the basis that such assaults were "horseplay" and "boys being boys."

103.    Defendants had a custom or policy of failing to disciple students whose assaults were made against students with disabilities on the basis that reports of assaults were based on heightened sensitivity and/or embellishment.

104.    Although John Doe was a member of the football team, his gender, perceived physical weakness, perceived sexual orientation, and failure to follow the code of silence as to other players' hazing and bullying tactics, made him a target for abuse, bullying and harassment from other team members and coaches.

105.    The affirmative acts of the Defendant, including but not limited to, its implementation of customs, practices and/or policies that resulted in a failure to properly train and supervise its employees regarding required procedures for handling bullying, harassment and assault, were the moving force and/or a direct causal link to the repeated harassment, bullying and assaults suffered by John Doe and were so extreme and outrageous as to shock the conscience.

106.    Defendant, after receiving information related to the abuse and unlawful conduct of John Doe's Harassers, remained deliberately indifferent and tacitly authorized, condoned, encouraged and acquiesced to the continuation of their wrongful and criminal conduct.

107.    Defendant intentionally, willfully and without justification deprived John Doe of his rights, privileges and immunities secured to his by the Constitution and the laws of the United States, including but not limited to, his rights to due process and to be free from sexual abuse as provided by the Fourteenth Amendment of the Constitution and his right to privacy and

to be free from violations of bodily integrity as protected by the Fourth, Fifth, Ninth and Fourteenth Amendments of the Constitution, in violation of 42 U.S.C. § 1983.

108.    As a direct and proximate result of such deprivation, the plaintiff suffered and continues to suffer invasion of bodily integrity, physical injury, indignity, humiliation, severe emotional distress and mental anguish.

## COUNT III

### Violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, through 42 U.S.C. § 1983 (Against Defendants Kloczko, Creedon, McSpirit, McKenna, Dunaj, DeZurik, Carbone and Dziekan in their Personal Capacities)

109.    The plaintiffs re-allege paragraphs 1 through 108 above and incorporate them herein.

110.    John Doe's right to Equal Protection of the Laws guaranteed by the Fourteenth Amendment to the United States Constitution was clearly established at all times relevant to this complaint.

111.    Defendants had a duty, themselves and through their agents, to treat John Doe and other students equally and to provide him with an equal access to education.

112.    Defendants had authority and responsibility to ensure that John Doe and other students were protected from gender and disability-based harassment and assault by other students.

113.    Defendants knew and/or reasonably should have known about the actions of Students A through F, John Doe's Harassers, and that such actions interfered with his well-established constitutional rights to an equal education, yet they failed to take proper action.

114.    Defendants knowingly placed John Doe, an identifiable victim, in a position of danger by their failures.

115.    Defendants rendered John Doe more vulnerable to gender and disability-based harassment by his peers by failing to take adequate steps to prevent or deter future harassment and through their dismissal of such actions as "horseplay" and "boys being boys" resulting in further emotional harm and deprivation of his equal right to access his education.

116.    Defendants themselves and through their agents were aware of the harassers conduct and either dismissed the conduct as "horseplay" and "boys being boys" or actively encouraged its continuation.

117.    John Doe received a lower level of protection as compared with other students at Torrington Public School because of his learning disability and his gender, in violation of his right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

118.    By their failure to take appropriate action to prevent the harassment and bullying of other students, the Defendants adopted and approved a custom, policy or practice of condoning and otherwise failing to prevent abuse by other students.

119.    By their failure to properly investigate and discipline the Harassers and to take action to stop such conduct by these students, the Defendants adopted and approved a policy, practice and custom of tolerating such harassment and bullying, and tolerating violations of students' rights to equal education.

120.    The actions of the Harassers against John Doe were sufficiently severe and pervasive to create and abusive educational environment.

121.    The response and/or lack of response by Defendants to the harassment and bullying was unreasonable in light of known circumstances, demonstrated deliberate indifference to John Doe's rights, and was extreme and egregious so as to shock the conscience.

122.    Defendants subjected John Doe to disparate treatment due to his gender and disability and otherwise violated his Constitutional rights by subjecting him to a hostile educational environment, permeated with severe harassment of which the defendants knew or should have known.

123.    The violation of John Doe's federally protected right to equal protection of the laws was proximately caused by affirmative acts and failures by the Defendants.

124.    Defendants actions violated the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, in violation of 42 U.S.C. § 1983.

125.    As a direct and proximate result of such deprivation, the plaintiff suffered invasions of bodily integrity, physical injury, humiliation, severe emotional distress, and mental anguish.

## COUNT IV
Violation of the Equal Protection Clause of the Fourteenth Amendment
To the United States Constitution, through 42 U.S.C. § 1983
(Against Torrington Board of Education)

126.    The plaintiff re-alleges paragraphs 1 through 125 above and incorporates them herein by reference.

127.    Defendant had a duty to treat John Doe equally and to provide her with equal access to education.

128.    Defendant had the authority and responsibility to ensure that John Doe was protected from gender-based and disability-based discrimination and assault by his Harassers.

129.    Defendant, through its agents, knew and/or reasonably should have known that Harassers' conduct subjected John Doe to disparate treatment and interfered with his well-established constitutional right to an equal education, yet they failed to take proper action.

130.    By their failure to take appropriate action to prevent the harassment and bullying by other students, the Defendant adopted and approved a custom, policy or practice of condoning and otherwise failing to prevent abusive treatment by other students.

131.    The actions of John Doe's Harassers were sufficiently severe and pervasive to create an abusive educational environment.

132.    The response and/or lack of response by the Defendant to the harassment was clearly unreasonable in light of the known circumstances, demonstrated deliberate indifference to the rights of John Doe, and was so extreme and egregious as to shock the conscience.

133.    Defendant subjected John Doe to disparate treatment due to his gender and disability and otherwise violated his Constitutional rights by subjecting him to a hostile educational environment, permeated with severe harassment, of which the defendants knew or should have known.

134.    The violation of John Doe's federally protected right to equal protection of the laws was proximately caused by affirmative acts and failures of the Defendants.

135.    Defendants actions violated the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, in violations of 42 U.S.C. § 1983.

136.    As a direct and proximate result of such deprivation, the plaintiff suffered and continues to suffer invasion of bodily integrity, physical injury, indignity, humiliation, severe emotional distress and mental anguish.

## COUNT V

### Violation of Section 504 of the Rehabilitation Act, 29 U.S.C. §794
### (Against the Torrington Board of Education)

137.    The plaintiffs re-allege paragraphs 1 through 136 above and incorporate them herein by reference.

138.    On or about July 25, 2014, the plaintiff filed a due process complaint with the State of Connecticut Department of Education seeking, inter alia, to exhaust administrative remedies.  As of the date of this Complaint, the case remains pending.

139.    Section 504 requires recipients of federal funding to provide an appropriate education to all qualified handicapped persons who are in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap.

140.    The Board is a recipient of federal financial assistance, including federal financial assistance provided to Hartford schools, special education and Section 504 programs.

141.    Recipients of federal financial assistance must provide regular or special education and related aids and services designed to meet the individual educational needs of disabled persons as adequately as the needs of non-disabled persons are met and may not discriminate on the basis of disability in providing these services.

142.    Pursuant to 29 U.S.C. § 794, Defendants are required to establish and maintain procedures to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of FAPE.

   a.    Defendants acted with deliberate indifference and gross misjudgment when they contributed to, condoned and/or acquiesced in creating an abusive educational environment by engaging in conduct that includes, but is not limited to: Failing

and refusing to protect John Doe  from known ongoing risks of harassment, bullying, assaults, and abuse when they had a duty to do so;

b.  Failing to stop ongoing and violent assaults, bullying, and abuse of John Doe  that they witnessed in progress;

c.  Failing to provide adequate supervision, despite their knowledge of prior assaults, harassment, bullying and abuse and the fact that John Doe was especially vulnerable to such activities by his Harassers;

d.  Permitting, condoning and/or failing to intervene in the ongoing harassment, bullying, assaults and abuse by John Doe's Harassers; and

e.  Failing to reasonably take steps to provide a meaningful safety plan for John Doe, and instead relying on his to advocate on his own behalf when they knew she was unable to do so as a result of his disability.

143.  Defendants further discriminated against John Doe by treating him differently than his non-disabled peers.

144.  Defendants violated John Doe's right to a FAPE by removing him from his high school and requiring him to attend school three hours each day at the Torrington Board of Education, a placement also used for expelled students.

145.  As a direct and proximate result of Defendants' deliberate and intentional actions and violations as described above, John Doe was denied access to his education in violation of Section 504.

146.  Defendants discriminated against John Doe on the basis of his disability in violation of the Rehabilitation Act, 29 U.S.C. § 794, and are liable for the injuries and damages described above

147.    As a direct and proximate result of Defendants' discrimination actions, John Doe suffered physical symptoms, indignities, humiliation, severe emotional distress and mental anguish.

## COUNT VI

### (Violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §12131)
### (Against the Torrington Board of Education)

148.    The plaintiff re-alleges paragraphs 1 through 147 above and incorporate them herein by reference.

149.    Torrington High School is a public entity as defined by Title II of the Americans with Disabilities Act ("ADA").

150.    Title II of the ADA provides that persons with disabilities shall be afforded meaningful access to the programs and activities of public entities.

151.    John Doe is a qualified individual with a disability in that she suffers from a learning disability.  John Doe's disability substantially limits his ability to access his education.

152.    John Doe was subject to unwelcome harassment, bullying, and abuse while attending Torrington High School.

153.    The harassment, bullying, and abuse suffered by John Doe was more pervasive and severe because of his disability.

154.    The effects of the harassment, bullying and abuse suffered by John Doe exacerbated the symptoms of his learning disability, further impeding John Doe's ability to access his education.

155.    The harassment, bullying and abuse suffered by John Doe was ongoing and sufficiently severe as to create an abusive educational environment.

a. The defendants contributed to, condoned and or/acquiesced in creating an abusive educational environment by engaging in conduct that includes, but is not limited to: Failing and refusing to protect John Doe from known ongoing risks of harassment, bullying, assaults, and abuse when they had a duty to do so;

b. Failing to stop ongoing and violent assaults, bullying, and abuse of John Doe that they witnessed in progress;

c. Failing to provide adequate supervision, despite their knowledge of prior assaults, harassment, bullying and abuse and the fact that John Doe was especially vulnerable to such activities by his Harassers;

d. Permitting, condoning and/or failing to intervene in the ongoing harassment, bullying, assaults and abuse by John Doe's Harassers; and

e. Failing to reasonably take steps to provide a meaningful safety plan for John Doe, and instead relying on his to advocate on his own behalf when they knew she was unable to do so as a result of his disability.

156. Defendants discriminated against John on the basis of his disability in violation of the American with Disabilities Act, 42 U.S.C. § 12132, and are liable for the injuries and damages described above.

157. As a direct and proximate result of Defendants' discriminatory actions, John Doe suffered physical symptoms, indignities, humiliation, severe emotional distress and mental anguish.

## COUNT VII
### (Violation of Title IX of the Education Amendment of 1972, 20 U.S.C. § 1681)
### (Against the Torrington Board of Education)

158.     Plaintiffs re-allege paragraphs 1 through 157 above and incorporate them herein by reference.

159.     Defendants, by and through officials and/or administrators at Torrington High School, had knowledge at various times that John Doe had been and continued to be subjected to gender based harassment by his Harassers based upon the belief that harassment amongst boys can be dismissed as "horseplay."

160.     Defendants, by and through officials and/or administrators at Torrington High School, were made aware of Harassers actions and behaviors, through reports from John Doe, his mother, their direct observations, their direct involvement, as well as third-party reports but failed to take any corrective actions based upon the belief that harassment and bullying amongst boys can be dismissed as "horseplay."

161.     A majority of the harassment and abuse inflicted upon John Doe by his Harassers, such as daily assaults and other incidents of bullying, hazing, and other violations of his right to bodily integrity, occurred on school premises under the Defendants' control.

162.     Defendants had the authority and ability to address the allegations of sexual discrimination, harassment and abuse by John Doe's Harassers, and to institute remedial and corrective measures to protect John Doe and provide for his safety and well-being.

163.     Defendants made a conscious and intentional decision to ignore the risks of, and failed to respond to known acts of, abuse, discrimination and harassment by John Doe's Harassers, which was so severe, pervasive and objectively offensive as to deprive John Doe of the educational benefits or opportunities provided by Torrington High School.

164.     Despite having actual knowledge, Defendants demonstrated intentional and/or deliberate indifference in failing to take proper action against John Doe's Harassers.

165.     Defendants intentionally, willfully and without justification acted to deprive John Doe, on the grounds of his gender and sex, of his rights, privileges and immunities secured by the laws of the United States, particularly his right to be free from discrimination in education as provided by Title IX of Education Amendments of 1972, 20 U.S.C. § 1681.

166.     As a direct and proximate result of such deprivation, John Doe suffered physical injury, indignities, humiliation, severe emotional distress, mental anguish and invasion of bodily integrity.

## COUNT VIII
### State Law Negligence
### (Against All Defendants)
.

167.     The plaintiffs re-allege paragraphs 1 through 166 above and incorporate them herein by reference.

168.     Defendants had a duty to its students to provide a safe and productive school environment.

169.     Defendants breached that duty by negligently failing to prevent, investigate and punish bullying, harassing and assaultive behavior by his peers.

170.     Defendants' breaches of duty proximately caused John Doe to suffer sever and painful physical, psychological and emotional injuries, some of which may be permanent in nature.

171.     As a further result of Defendant's actions and failures to act, in violation of John Doe's constitutional and/or statutory rights, John Doe was forced to withdraw from Torrington

High School because of the fear and intolerable environment created by Defendants and by the events described above.

172.    As a further result of Defendants' acts and omissions, John Doe has been traumatized, causing his to suffer severe damage to his ego, his self-esteem, ability to relate to others ability to communicate and socialize with others, and depriving his of the opportunity to enjoy the benefits and advantages of attending high school in his local community, as well as his enjoyment of life activities.  Such trauma may be permanent in nature.

173.    The defendants are liable to the plaintiff for the injuries described above.

### COUNT IX
State Law Negligent Hiring, Retention and Supervision
(Against all Defendants)

174.    The plaintiffs re-allege paragraphs 1 through 173 above and incorporate them herein by reference.

175.    Defendants owed a duty to exercise reasonable care for the protection of John Doe against misconduct and inappropriate conduct and/or contact.

176.    Despite their actual or constructive knowledge of the harmful and humiliating bullying, harassment, threats and assaults, Defendants failed to adopt and promulgate policies and procedures to prevent such acts and/or failed to prohibit such acts at Torrington High School.

177.    Defendants failed and refused to provide proper training to teach counselors and administrators at Torrington High School to respond firmly and quickly to prevent dangerous, harmful and humiliating bullying, harassment, threats and assaults by John Doe's Harassers.

178.    The Defendants' acts and omissions proximately caused John Doe to suffer severe and painful physical, psychological and emotional injuries, some of which may be permanent in nature.

179.     As a further result of Defendant's actions and failures to act, in violation of John Doe's constitutional and/or statutory rights, John Doe has been forced to withdraw from Torrington High School because of the fear and intolerable environment created by Defendants and by the events described above.

180.     As a further result of Defendants' acts and omissions, John Doe has been traumatized, causing him to suffer severe damage to his ego, self-esteem, ability to relate to others, ability to communicate and socialize with others, and depriving him of his opportunity to enjoy the benefits and advantages of attending high school in his local community as well as enjoyment of life activities.  Such trauma may be permanent in nature.

181.     The defendants are liable to the plaintiff for the injuries described above.

**COUNT X**
Intentional Infliction of Emotional Distress
(Against Defendants Defendants Kloczko, Creedon, McSpirit, McKenna,
Dunaj, DeZurik, Carbone and Dziekan)

182.     The plaintiffs re-allege paragraphs 1 through 181 above and incorporate them herein by reference.

183.     Defendants engaged in conduct which they knew or reasonably should have known was likely to result in emotional distress.

184.     Defendants' conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community.

185.     As a direct and proximate cause of defendant's conduct, John Doe suffered emotional distress of a nature that no reasonable person could be expected to endure.

## COUNT XI
### Negligent Infliction of Emotional Distress
### (Against all Defendants)

186.   The plaintiffs re-allege paragraphs 1 through 185 above and incorporate them herein by reference.

187.   Defendants owed a duty to plaintiffs to exercise reasonable care when assuming the care, responsibility, and supervision of John Doe.

188.   Defendants were negligent and breached their duty to exercise reasonable care in providing a safe environment at Torrington High School.

189.   As a result of Defendants' conduct, John Doe has suffered severe emotional distress as more fully alleged herein.

## COUNT XII
### Violation of Connecticut General Statutes § 46a-64

190.   The plaintiff re-alleges paragraphs 1 through 189 above and incorporates them herein by reference.

191.   Defendants, by and through officials and/or administrators at Torrington high School, had knowledge at various times that John Doe had been and continued to be subjected to physical assault, harassment and bullying by his Harassers

192.   Defendants violated provisions of Connecticut General Statutes § 46a-64(a)(1) and 46a-64(a)(2) when they failed to respond to complaints of harassment due to the Plaintiff's sex and disability and, instead, dismissed the harassment as "boys being boys" and "horseplay" creating an atmosphere where John Doe was unable to attend school without fear of harassment and/or assault.

193.    Defendants, by and through officials and/or administrators at Torrington High School, denied John Doe the full and equal accommodations of his school based upon his sex and perception of gender identity in violation of § 46a-64(a)(1).

194.    Defendants, by and through officials and/or administrators at Torrington High School, denied John Doe the full and equal accommodations of his school based upon his intellectual disability in violation of §46a-64(a)(1).

195.    Defendants, by and through officials and/or administrators at Torrington High School, denied John Doe the full and equal accommodations of his school by segregating him from the general school population and placing him in a separate education facility based upon his sex, gender identity and his intellectual disability in violation of §46a-64(a)(2).

## COUNT XIII
### Violation of Connecticut General Statutes §10-15(c)

196.    The plaintiff re-alleges paragraphs 1 through 195 above and incorporates them herein by reference.

197.    Defendants, by and through officials and/or administrators at Torrington High School, violated provisions of Connecticut General Statutes §10-15(c) when they failed to respond to complaints of harassment due to the complainant's sex, disability, and perceived sexual orientation.

198.    Defendants, by and through officials and/or administrators at Torrington High School, denied John Doe an equal opportunity to participate in the activities, programs and courses of study over in public schools based upon his sex and perceived sexual orientation in violation of Connecticut General Statutes §10-15(c).

## COUNT XIV
### Violation of Connecticut General Statutes §46a-58(a)

199.    The plaintiff re-alleges paragraphs 1 through 198 above and incorporates them herein by reference.

200.    Defendants, by a through officials and/or administrators at Torrington High School, violated provisions of Connecticut General Statutes §46a-58(a) when it subjected and/or caused John Doe to be subjected to the deprivation of his rights, privileges or immunities, secured or protected by the Constitution or laws of this state or of the United States, on account of his sex, physical disability and/or perception regarding his sexual orientation.

## RELEASE OF JURISDICTION

201.    The plaintiff has obtained a release of jurisdiction from the Connecticut Commission on Human Rights and Opportunities as required by Connecticut General Statutes § 46a-101(c).

## RELIEF REQUESTED

**WHEREFORE**, the plaintiffs claim judgment against the defendants and each of them, jointly and severally as follows:

A.  Compensatory damages in an amount warranted by the evidence at trial;

B.  Punitive damages in an amount warranted by the evidence at trial;

C.  Injunctive relief;

D.  Reasonable attorney fees and costs incurred in this action;

E.  Such other relief as permitted by statute and as this court shall consider to be fair and equitable.

## JURY DEMAND

The plaintiffs hereby demand a jury on all claims and issues so triable.


Respectfully submitted,


THE PLAINTIFF
By his attorney,


/s/ Elizabeth Knight Adams
Elizabeth Knight Adams, BBO # 659562
The Law Offices of Elizabeth Knight Adams
81 Wethersfield Avenue, Suite 2
Hartford, CT 06114
Telephone: (860) 724-1300
Facsimile: (860) 724-1302
Electronic mail: eadams@ekadamslaw.com