UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN DOE, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| TORRINGTON BOARD OF EDUCATION, | : | No. 3:15-cv-00452 (MPS) |
| CHERYL KLOCZKO, JOANNE CREEDON, | : | |
| CHARLES McSPIRIT, MICHAEL McKENNA, | : | |
| DANIEL DUNAJ, JOHANNAH DEZURIK, | : | |
| GERALD CARBONE and JAMES DZIEKAN | : | |
| | : | |
| Defendants. | : | |

## ORDER ON MOTION FOR RECONSIDERATION

Plaintiff John Doe asks the Court to reconsider its earlier dismissal and allow him to file a

second amended complaint in this school bullying case. Doe presents newly discovered evidence

to bolster his claim that Defendants—the Torrington Board of Education (the "Board"), head

football coach Daniel Dunaj, and several other Board employees—violated his due process rights

by placing him in danger of physical and sexual assault, hazing, and other harassment while he

was a student at Torrington High School. As explained below, the motion for reconsideration

(ECF No. 79) is GRANTED in part and DENIED in part. The Court will permit Doe to file a

second amended complaint asserting a state-created danger claim against Dunaj only, on the

basis of the newly discovered evidence. The Court also directed the parties to brief the question

whether the case should be dismissed for failure to exhaust administrative remedies. Both parties

argued that it should not, and the Court agrees.

## I.       BACKGROUND

The Court assumes familiarity with the factual allegations in this case, which are set forth

in detail in its earlier ruling. (ECF No. 75 at 2-10.) As for the procedural history, on July 25,

1

2014, Doe's parent initiated a state administrative due process hearing, claiming that the Board had failed to provide Doe with a free and appropriate public education in violation of the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400, *et seq.* ("IDEA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. §794 ("Section 504"). (ECF No. 88-1 at 1.) Ten months later, on March 27, 2015, Doe filed a civil action in this court against the Board, football coach Daniel Dunaj, and seven other employees. (ECF No. 1.) On May 25, 2015, Doe's parent re-filed the state due process hearing (ECF No. 88-1 at 1), and on May 29, 2015, Doe filed a first amended complaint in this case. (ECF No. 22.)

The first amended complaint brought several federal claims: violations of the Due Process Clause of the Fourteenth Amendment under 42 U.S.C. § 1983; the Equal Protection Clause of the Fourteenth Amendment under § 1983; Section 504; Title II of the Americans with Disabilities Act, 42 U.S.C. §12132; and Title IX of the Higher Education Act of 1972, 20 U.S.C. § 1681. (*Id.*, Counts One through Seven.) It also included state law claims of negligence; negligent hiring, retention, and supervision; intentional infliction of emotional distress; negligent infliction of emotional distress; and violations of Conn. Gen. Stat. §§ 46a-64, 10-15(c), and 46a-58(a). (*Id.*, Counts Eight through Fourteen.)

On August 5, 2015, the parties agreed by letter that the state due process hearing officer had jurisdiction over the claims regarding the right to a free and appropriate education under the IDEA and Section 504, but not the alleged affirmative acts of discrimination. (ECF No. 39-1.) They agreed to bifurcate the two issues. (*Id.*) On September 10, 2015, Doe and the Board reached a resolution of the state administrative process via a settlement agreement. (ECF No. 88-1 at 1-4.) The settlement provided that the Board would pay $32,500 for Doe's qualifying

educational expenses. (*Id.* at 2.) Doe agreed to waive "all claims arising out of or in relation to the Student's educational program," but not the claims presented in this civil action. (*Id.* at 2-3.)

On March 30, 2016, the Court granted Defendants' motions to dismiss, holding that Doe had failed to allege facts sufficient to state a claim as to the federal violations, and declining to exercise supplemental jurisdiction over the state law claims. (ECF No. 75.) On April 28, 2016, Doe filed a motion urging reconsideration of the substantive due process claim only, on the basis of newly discovered evidence and to prevent manifest injustice. (ECF No. 79).

On October 3, 2016, the Court issued an order directing the parties to show cause why the case should not have been dismissed without prejudice for failure to exhaust claims under the IDEA. (ECF No. 86.) The parties responded on October 24, 2016, with both sides arguing that IDEA exhaustion was not required. (ECF Nos. 88, 89.)

## II.     LEGAL STANDARD

"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation marks and citation omitted.)

### III.   DISCUSSION

#### a.   State-Created Danger

As explained in the Court's earlier ruling (ECF No. 75 at 12-15),[1] "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). An exception to this general rule applies when the state "in some way had assisted in creating or increasing the danger to the victim." *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008) (internal quotation marks and citation omitted). When "state officials communicate to a private person that he or she will not be . . . punished, or otherwise interfered with while engaging in misconduct that is likely to endanger the life, liberty or property of others, those officials can be held liable under section 1983 for injury caused by the misconduct" even if "none of the defendants are alleged to have communicated the approval explicitly." *Pena v. DePrisco*, 432 F.3d 98, 111 (2d Cir. 2005). "A failure to interfere when misconduct takes place, and no more, is not sufficient to amount to a state *created* danger." *Id.* at 110 (emphasis in original). And "in the context of school bullying and harassment, courts have held that schools have no duty under the due process clause to protect students from assaults by other students, even where the school knew or should have known of the danger presented." *Scruggs v. Meriden Bd. of Educ.*, 2007 WL 2318851, at *12 (D. Conn. 2007) (internal quotation marks omitted) (citing cases by the 3rd, 5th, 6th, 7th, 8th, and 10th Circuits). In addition, to establish a due process violation, a plaintiff must also show that the state actor's "behavior was 'so

---

[1] Plaintiff argues that the Court misapplied controlling Second Circuit precedent in its earlier ruling. But nothing in Plaintiff's motion has convinced the Court that there were "controlling decisions… that the court overlooked," *Shrader*, 70 F.3d at 257, or that the Court otherwise misinterpreted Second Circuit law.

egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"

*Matican*, 524 F.3d at 155 (*quoting Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)).

In this case, the newly discovered evidence presented by Doe is sufficient to state a

plausible claim that Dunaj, and Dunaj only, is liable for violating Doe's substantive due process

rights under a theory of state-created danger. Specifically, the Department of Children and

Families interviews attached to the motion for reconsideration (ECF No. 79-11) include

allegations, albeit conflicting ones, that Dunaj encouraged or condoned student athletes' violent

behavior, implicitly communicating that they would not be "punished, or otherwise interfered

with while engaging in misconduct that [was] likely to endanger the life, liberty or property of

others." *Pena*, 432 at 111.

In the interviews, one student stated that the varsity players "push [the freshmen] to the

ground, steal their shorts for practice and would swear at them" and "all the coaches know this

was going on but would do nothing about it… the coaches sometimes encourage the violence as

the coaches are verbally mean to the players-which them [sic] makes the players verbally mean

to the lower classman." (ECF No. 79-11 at 3.) When a student missed practice for a funeral, "the

coaches were picking on him saying he was lying and really out having fun. This resulted in the

upperclassman calling him names." (*Id.*) The student stated that when a player gets suspended,

the coaches make the entire team do laps – "this results in the players punching the kid who got

suspended who made them run more… the coaches know by making the entire team run for 1

kid-this is going to result in the other kids ganging up on that 1 kid." (*Id.*) After an incident

where one student put icy-hot on his hands and put his hands on another student's penis while

two others held him down, there were reports that "Coach [redacted] heard what happened but

told the kids 'just don't mount each other.'" (*Id.* at 4.) According to another student, "the coaches

probably know more about what is going on then [sic] they will ever day [sic]-but they try to preach to the players to correct the behavior" (*Id.* at 9.)

It is unclear from these interviews whether the "coaches" mentioned include Dunaj, and to what extent Dunaj and the other coaches knew about the students' alleged misconduct. (Dunaj is the only coach named as a defendant.) For example, the "just don't mount each other" comment, which is perhaps the most serious allegation, appears to be attributed to a coach who is *not* Dunaj, based on the overall context.  But some of the other statements quoted above do not differentiate between the "coaches" and, read in context, appear to include all of them. To be sure, the interviews also include more favorable statements that do identify Dunaj. For example, one student and his mother stated that "Dan Dunaj is the most appropriate" and they did "not think he knows everything that goes on as he is always on the field or in his office working on plays etc." (*Id.* at 3.) Other students, referring to the "coaches" in general, asserted that if the coaches were aware of violent incidents they would have taken action, for example "they would have talked to the team as violence is not tolerated on the team." (*Id.* at 6.)

At the motion to dismiss stage, however, the Court must draw all reasonable inferences in the plaintiff's favor. The Court therefore concludes that the new evidence is sufficient to allege that Dunaj "plainly transmitted the message" that what the students did "was permissible and would not cause [them] problems with authorities," and further that these alleged actions were "egregious." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 430-31 (2d Cir. 2009).

On the other hand, Doe has not stated a plausible claim that any Defendant other than Dunaj assisted in increasing or creating the danger to him. For example, the newly discovered evidence concerning Dunaj's conduct while employed at Seymour High School (ECF Nos. 79-2

to 79-9), though it may be relevant to the state law claims, does not affect Doe's state-created

danger argument. None of the Seymour High School evidence suggests that Defendants

communicated, explicitly or implicitly, to students at Torrington High School that they would

not be punished for assaulting or bullying Doe.

### b. IDEA Exhaustion

On the separate issue of IDEA exhaustion, after reviewing the parties' responses to the

Order to Show Cause (ECF Nos. 88, 89), the Court has concluded that exhaustion is not required

in this case. The IDEA requires plaintiffs to exhaust administrative remedies before filing a civil

action that seeks relief available under the IDEA. 20 U.S.C. §1415(l).[2] "The Second Circuit has

long held that failure by plaintiffs to exhaust the IDEA's administrative remedies deprives the court

of subject matter jurisdiction over their claims, including claims brought under the other federal

statutes referred to in § 1415(l) if those claims seek relief available under the IDEA." *Baldessarre*

*v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 502 (S.D.N.Y. 2011). "'Relief

available' means relief for the events, condition, or consequences of which the person complains,

not necessarily the kind of relief the complaint demands." *Polera v. Bd. of Educ. of Newburgh*

*Enlarged City Sch. Dist.*, 288 F.3d 478, 490 (2d Cir.2002) (internal quotation marks and citation

omitted).

The exhaustion requirement applies even where, as here, the plaintiff does not explicitly

plead an IDEA claim and seeks a damages remedy unavailable under the IDEA. *See Cave v. E.*

---

[2] "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C. § 1415(l).

*Meadow Union Free Sch. Dist.*, 514 F.3d 240, 247 (2d Cir. 2008) ("We… decline to excuse appellants from the exhaustion requirement merely because in their suit they seek, *inter alia*, pecuniary damages, a remedy unavailable under the IDEA."); *DiStiso v. Town of Wolcott,* 2006 WL 3355174 at *5 (D. Conn. Nov. 17, 2006) ("To the extent the complaint could be construed to allege claims under the IDEA, even though such claims are disavowed by Plaintiff or cloaked in legal theories distinct from IDEA, those claims are dismissed for lack of subject matter jurisdiction.").

However, when the "claims [are] based on conduct other than that required by the IDEA…claims not implicating the diagnosis of the children's disabilities or the adequacy of the educational services provided to the children," IDEA exhaustion does not apply. *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 300 (D. Conn. 2009). Conduct required by the IDEA is "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education." *Cave*, 514 F.3d at 245 (citing 20 U.S.C. § 1415(b)(6)(A)).

In this case, the Court agrees with the parties that the IDEA exhaustion requirement is inapplicable. The remaining claims, including failure to protect from assault, are "materially distinguishable from claims that could fall within the ambit of the IDEA." *Id*. at 247. In particular, the claims do not implicate whether Doe was properly diagnosed as needing special education services, or the adequacy of the education provided. In that sense, they are unlike claims found to require exhaustion in other cases. *See, e.g. id.* (child prohibited from bringing his service dog to school); *Polera*, 288 F.3d 478 (school failed to provide proper study materials and tutoring); *Murphy v. Town of Wallingford*, 2011 WL 1106234 (D. Conn. Mar. 23, 2011) (plaintiff improperly identified as needing special education services due to racial discrimination). Instead, this case has

more in common with *Karlen*, where the district court, while dismissing some claims for lack of IDEA exhaustion, nevertheless exercised jurisdiction over other claims, including "racial discrimination claims based on allegations of deliberate indifference to the harassment by [plaintiffs'] classmates, and the state law claims under Connecticut's anti-bullying statute and for intentional infliction of emotional distress." 638 F. Supp. 2d at 300.

At any rate, as of the re-opening of the case, IDEA administrative remedies *have* been exhausted. Plaintiff pursued IDEA claims through the state administrative process, and those claims were fully resolved through a settlement agreement on September 10, 2015. (ECF No. 88-1 at 1-4.) The purpose of exhaustion, "to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances," has been satisfied. *Polera*, 288 F.3d at 487. And the Board provided Doe with the relief available under the IDEA by compensating him for educational services and enabling him successfully to complete his high school education at a different institution. (ECF No. 88-1 at 1-6.) In light of the Court's conclusion above, Doe's only remaining federal claim is the substantive due process, state-created danger claim against Dunaj. This is a claim for which there could be no relief in the IDEA administrative process, particularly now that claims related to the adequacy of educational services have been fully resolved.

## IV.   CONCLUSION

For the foregoing reasons, the motion for reconsideration and request for permission to file a second amended complaint (ECF No. 79) is GRANTED in part and DENIED in part. Doe shall file an amended complaint within 21 days of this Order, incorporating, as relevant, the newly discovered evidence described in his motion for reconsideration. With regard to the previously dismissed federal claims (Counts One through Seven of the first amended complaint),

Doe may replead *only* the portion of Count One that sets forth a substantive due process claim against Defendant Daniel Dunaj based on a theory of state-created danger. Doe may also replead any or all of the state law claims (Counts Eight through Fourteen of the first amended complaint), over which the Court had previously declined to exercise supplemental jurisdiction in light of the dismissal of the federal claims. *See* 28 U.S.C. § 1367.  Defendants will then have 21 days to respond.

Also, within 30 days of this order, the parties shall file a joint status report regarding the state of discovery and proposed revisions to the scheduling order in light of the re-opening of the case, including proposed deadlines for completing discovery, filing dispositive motions, and filing the joint trial memorandum.

IT IS SO ORDERED.

                                                    _____/s/_____
                                                    Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                November 17, 2016