**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| JOHN DOE, | |
|      Plaintiff, | No. 3:15-cv-452 (MPS) |
| v. | |
| TORRINGTON BOARD OF EDUCATION, CHERYL KLOCZKO, JOANNE CREEDON, CHARLES MCSPIRITT, DANIEL DUNAJ, JOHANNA DEZURIK, GERARD CARBONE, and MICHAEL MCKENNA, | |
|     Defendants. | |

**RULING ON MOTIONS FOR SUMMARY JUDGMENT AND SANCTIONS**

Plaintiff John Doe brought this action as a result of bullying, assaults, and sexualized hazing he alleges that he experienced while he was a special education student at Torrington High School. He sued the Torrington Board of Education ("the Board"), former Superintendent of Schools Cheryl Kloczko, former principal Joanne Creedon, former vice principal Charles McSpiritt, football coach Daniel Dunaj, guidance counselor Johanna DeZurik, special education case manager Gerard Carbone, athletic director Michael McKenna, and social worker James Dziekan ("Defendants"). Doe claims that the Defendants failed to comply with their duties to protect him by allowing a culture of bullying and sexualized hazing to proliferate at the school, and in particular on the football team, and failing to adequately respond when he became a repeated target for abuse.

The Board, Kloczko, Creedon, McSpiritt, DeZurik, Carbone, and Dziekan ("the Administrative Defendants") move for summary judgment with respect to the remaining claims against them: negligence (Count Two), negligent hiring, retention, and supervision (Count Three),

and negligent infliction of emotional distress (Count Five).[1] The Administrative Defendants argue that the doctrine of sovereign immunity bars Doe's claims. They also argue that they are immune from liability under a state statute governing suits against school officials related to bullying and under statutory and common law governmental immunity for municipal actors.

Before filing a response to the Administrative Defendants' motion for summary judgment, Doe filed a motion for sanctions against all Defendants except Michael McKenna pursuant to Fed. R. Civ. P. 37. Doe argues that (1) the Defendant Board of Education failed to produce a witness who was adequately prepared testify under Fed. R. Civ. P. 30(b)(6); (2) the Defendants intentionally destroyed evidence relevant to his claims; and (3) the Defendants failed to disclose an assistant coach's knowledge of an assault that occurred in the football locker room.

For the reasons set forth below, Doe's motion for sanctions is DENIED and the Administrative Defendants' motion for summary judgment is DENIED.

## I.    Factual Background

The following relevant facts, are taken from the parties' Local Rule 56(a) Statements.

### A.  Bullying Incidents or Reports Involving John Doe

Plaintiff John Doe attended Torrington High School ("THS") from August, 2011 through April, 2013. (Defendant's Local Rule 56(a)1 Statement of Undisputed Facts, ECF No. 138 ¶ 1) ("56(a)1 Stmt.").

#### 1.  The 2011–2012 School Year

---

[1] Defendants Dunaj and McKenna have not moved for summary judgment with respect to the remaining claims asserted against them: violation of substantive due process (Count I, against Dunaj only); negligence (Count II); negligent hiring, retention, and supervision (Count III); intentional infliction of emotional distress (Count IV, against Dunaj only); and negligent infliction of emotional distress (Count V).

Doe joined the football team in 2011. *Id.* ¶ 2. He experienced several bullying incidents during the 2011-2012 school year. In October 2011, an incident occurred in the football locker room between Doe and another student ("Student A"), and Doe's glasses were broken. *Id.* ¶ 3. The parties dispute the severity of the incident. In his deposition Doe asserted that Student A threw him to the ground, hit him repeatedly, and rubbed Doe's hat on his groin. (56(a)1 Stmt. ¶ 3; Plaintiff's Local Rule 56(a)2 Statement, ECF No. 154 ¶ 35) ("56(a)2 Stmt.") The parties agree that Doe or his mother reported the incident to Defendant McSpiritt, who suspended Student A and ordered him to repay the cost of the glasses. (56(a)1 Stmt. ¶ 4.) McSpiritt reported the incident to Defendant Creedon and assured Doe and his mother that the incident would be kept confidential. (*Id.* ¶ 6-7.) In his deposition, Doe stated that other students nevertheless found out about his report to McSpiritt and retaliated against him. (56(a)2 Stmt. ¶ 36.) He stated that he feared reporting other incidents as a result of the retaliation he faced. *Id.*

In either October or November 2011, a student ("Student B") who did not attend THS at the time tackled Doe to the ground and told him he wanted to fight. (56(a)1 Stmt. ¶ 9; 56(a)2 Stmt. ¶ 37) The incident ended when Doe indicated he would not fight. (*Id.*) The parties agree that Doe did not report the incident at the time, but they dispute whether Doe's mother reported the incident at a meeting soon thereafter. (*Id.*) The parties dispute whether the Administrative Defendants had a responsibility to supervise students at the time the incident occurred. (56(a)2 Stmt. ¶ 9.) They also dispute whether Doe was "messing around" or wrestling before the incident occurred. (*Id.*)

Doe asserts that, beginning in fall 2011, he was punched daily by two students. (*Id.* ¶ 43; 56(a)1 Stmt. ¶ 10.) The Administrative Defendants claim that Doe did not report these assaults until April 2013, and that McSpiritt intervened once he was aware. (56(a)1 Stmt. ¶ 10.) Doe argues that he did report the incident before April 2013 and contends that McSpiritt's intervention was

inadequate. (56(a)2 Stmt. ¶ 10.) Doe notes that the assaults occurred in public during school hours. (*Id.* ¶ 10.1.) At some point in fall 2011, Doe also claims that members of the football team tricked him into climbing into a locker and did not let him out for ten to fifteen minutes. (56(a)2 Stmt. ¶ 38.)

In November 2011, Doe's mother contacted his guidance counselor, Defendant DeZurik, to express her concern about students bullying her son. (56(a)1 Stmt. ¶ 8.) In her deposition, Doe's mother stated that she specifically described the incident where Doe broke his glasses and the incident where he was locked in the locker. (56(a)2 Stmt. ¶ 8.1.) DeZurik met with Doe, but Doe refused to name the students. *Id.* Doe's mother stated that she informed DeZurik and McSpiritt that she and her son did not want to disclose the names of the students involved for fear of retaliation. (*Id.* ¶ 8.2.) Doe asserts that his mother had a Planning and Placement Team meeting, attended by both DeZurik and McSpiritt, where she again voiced her concerns. (*Id.* ¶ 8.3.) Doe's Individualized Education Program (IEP) does not include any notation about her concerns. (*Id.* ¶ 8.4.)

Doe suffered a back injury in football training in January 2012. (56(a)1 Stmt. ¶ 11.) His teammates ridiculed him, calling him "pussy" and "bitch," which the coaches condoned. (*Id.*) Doe further asserts that one coach joined in, calling him a "baby" while the head coach looked on. (56(a)2 Stmt. ¶ 40.) The Administrative Defendants claim that Doe did not report this incident (56(a)1 Stmt. ¶ 11). Doe argues that Defendant Kloczko made statements in her deposition suggesting that she was aware that Doe's mother reported the incident and that McSpiritt

responded to it, but cites portions of the deposition transcript not provided to the court. (56(a)2 Stmt. ¶ 11) (citing "Kloczko Dep. 284-86").[2]

During a track event in Spring 2012, one student "hiked some rocks" at Doe, one of which went down his throat. (56(a)1 Stmt. ¶ 12.) Doe asserts that his mother reported the incident in Spring 2012, which the Administrative Defendants dispute. (56(a)2 Stmt. ¶ 12.) Doe also argues that the Administrative Defendants had an obligation to supervise students during the event. *Id.*

Also in Spring 2012, Doe states that students would frequently "karate-chop" one another on the neck. (56(a)2 Stmt. ¶ 50.) A teacher observed Doe and another student hitting each other in this way, and each received an in school suspension. (56(a)1 Stmt. ¶ 13.) Defendant Dan Dunaj forced the entire team to run extra "gassers" because Doe had received a suspension. (56(a)2 ¶ 50.) Doe stated in his deposition that his teammates retaliated against him, including one student who repeatedly chopped him on the neck. (56(a)2 Stmt. ¶¶ 26, 51.)

### 2. The Sexual Assault

In August 2012, Doe was the victim of a serious sexual assault. Doe was playing football with members of the football team at a municipal park. (56(a)1 Stmt. ¶ 14). Student B, who had transferred to THS in early 2012, chased him down, tackled him, and pulled his pants down. (56(a)2 Stmt. ¶ 12.4.) While Doe tried to pull his pants back up, Student B, inserted a straw into his rectum. (*Id.*)[3] The Administrative Defendants assert that the incident occurred over summer break, entirely removed from school or football practice. (*Id.* ¶ 14.) Doe contends that the incident occurred after a football practice during the football season. (56(a)2 Stmt. ¶¶ 12; 12.2–.3.) The

_____

[2] The last page included from Kloczko's deposition in Doe's record on summary judgment is 281. (ECF No. 158-15 at 151.)

[3] Student B was ultimately arrested, tried, and convicted for the assault. (56(a)1 Stmt. ¶ 20.)

parties agree that Doe did not disclose the assault to the Administrative Defendants until April 2013, shortly after Doe reported it to a state trooper through a mentoring program. (56(a)1 Stmt. ¶¶ 20-22.) Doe contests the Administrative Defendants' assertion that they had no notice of the assault before that time. (56(a)2 Stmt. ¶ 22.) He stated in his deposition that many students were aware of the incident soon after it occurred. (*Id.*) Doe also argues that the Administrative Defendants destroyed documents relating to a 2012 hazing incident that may have contained evidence of their knowledge before April 2013. (*Id.*)

### 3. 2012–2013 School Year

In the fall of the 2012-2013 school year, Doe's mother contacted Defendant DeZurik to express concern over bullying in Doe's biology class. (56(a)1 ¶ 15.) She explained that she did not want Doe identified in any response for fear of retaliation. (*Id.*) DeZurik asked the biology teacher to observe Doe's interactions and moved his seat next to a paraprofessional. (*Id.*) The Administrative Defendants claim that DeZurik stayed in touch with Doe's mother and grandmother throughout the year about bullying issues. (56(a)1 Stmt. ¶ 16.) Doe claims that his mother and grandmother did remain in touch, but that the Administrative Defendants refused to take any action because he would not name the students who bullied him. Doe also notes that DeZurik left a voicemail on his mother's phone indicating that the Administrative Defendants would not take any action on the bullying because Doe would not name names. (56(a)2 Stmt. ¶ 52.) Doe states that he began to miss school that fall because he feared for his physical safety and suffered from severe anxiety over bullying. (56(a)2 ¶ 53.) His absences increased over time as his anxiety escalated. (56(a)2 ¶ 61.)

Later that fall, Doe and his mother attended a Planning and Placement Team meeting with DeZurik, McSpiritt, and Defendant Carbone, his special education case manager. (56(a)1 Stmt. ¶

17.) At the meeting, Carbone pressed Doe to name the students who were causing him problems. (*Id.*) As Doe described the meeting in his deposition, Carbone "slammed his hands on the table, like, launched himself out of the seat, and was leaning over the table. His face was, like, red, and he was just screaming . . . ." (56(a)2 Stmt. ¶ 17.2.) Doe stated that Carbone accused him of complaining about "phantom bullies." (*Id.*). At another Planning and Placement Team meeting in January 2013, Doe's mother states that Defendants "DeZurik, McSpiritt, and Carbone minimized" the verbal harassment that Doe was experiencing, calling it "banter." (56(a)2 Stmt. ¶ 58.)

In March 2013, Doe's mother states that she contacted Defendant Dziekan, the School Social Worker, to inform him that Doe was still being bullied. (56(a)2 Stmt. ¶ 66.) Dziekan stated that he had not met with Doe despite Doe's IEP requiring that they meet at least once per week. (*Id.*) Doe states that he met with Dziekan only twice. (56(a)1 ¶ 23). Doe's mother testified that Doe suffered another assault in the halls that month as a student shoved him and said, "What the fuck, gay boy." (56(a)2 ¶ 64.) She stated that she informed Defendant Carbone that Doe would not attend school the following day because he feared for his safety. (*Id.* ¶ 65)

On April 1, 2013, Doe's mother states that Doe was in resource hall and became nervous when the paraprofessional in the room opened the blinds, allowing students in the hall to look in (56(a)2 Stmt ¶¶ 67-68.) Doe's mother states that the paraprofessional taunted him, called him a "hider," and told the other students they should write his name on the window in paint. (*Id.*) Doe's mother also states that the paraprofessional taunted him when he requested to leave early (as permitted by his guidance counselor) to avoid other students between classes. (*Id.*) Later that same day, Doe states that Student B and another student cornered him at track practice, "jacked him up" against a fence, punched him repeatedly, and tore his shirt (56(a)2 Stmt. ¶ 69.)

On April 5, 2013, Doe's mother removed him from school after Doe and his state trooper mentor told his mother about the August 2012 sexual assault. (56(a)1 Stmt. ¶ 20.) Doe's mother and his state trooper mentor attended a Planning and Placement Team meeting three days later. (*Id.* ¶ 21) The trooper disclosed that a serious incident had occurred in August involving Doe but did not provide details. (*Id.*) At the meeting, McSpiritt was tasked with creating a safety plan for Doe. (*Id.*) Doe argues that the record shows the plan was ineffective, as the next day he crossed paths with a student that the plan should have helped him avoid. (*Id.*)

On April 17, 2013, a detective with the Torrington Police Department accompanied Doe, his mother, and his grandmother to a meeting with Defendant Kloczko. (56(a)1 Stmt. ¶ 22.) At the meeting, the detective disclosed the details of the August 2012 sexual assault. Kloczko suggested that Doe attend Migeon Academy to assure his safety. (*Id.*) Doe describes Migeon Academy as a program for students who have been expelled. (56(a)2 Stmt. ¶ 22.) The Administrative Defendants state that students attend the program for other reasons as well. (56(a)1 Stmt. ¶ 22.)

### B. Incidents Involving Third Parties

Doe points to several incidents of bullying, hazing, assault, and criminal activity committed by members of the football team, which he contends should have put the Administrative Defendants on notice as to the severity of the problems associated with the team:

- *Fall 2011* – A group of older members of the football team subjected younger students to daily assaults, striking them repeatedly on the arms in the same way that they struck Doe. (56(a)2 Stmt. ¶¶ 45-46.)
- *November 2011* – Two students on the football team were arrested for the rape of two female students. (56(a)2 Stmt. ¶ 39.) One of the students pleaded guilty to risk of injury to a minor with illicit sexual contact, and both students were expelled from THS. (*Id.*)

- *December 2011* – Superintendent Kloczko sent Principal Creedon a memorandum stating that Creedon had mishandled the bullying of a gay student and mandating that THS administrators review "protocols for dealing with verbal harassment and the physical abuse between and among students . . . ." (*Id.* ¶ 41.)

- *March 2012* – A member of the football team was charged with felony robbery for jumping three younger boys. (56(a)2 Stmt. ¶ 48.) He was nevertheless allowed to play football, and even won Most Valuable Player that December. *Id.* He reportedly conspired to commit the robbery with three other THS football players. (*Id.*)

- *September 2012* – An athletic trainer working with the football team reported observing a hazing incident in the football locker room where one student was forced to choose between sucking the toes of an upper classman or having a pencil inserted into his rectum. (56(a)2 Stmt. ¶¶ 25.05, 25.9.) Doe points to evidence that this hazing was part of an annual initiation of the freshman quarterback. (56(a)2 Stmt. ¶¶ 32-33.)

- *Summer 2012* - During summer conditioning between the 2011-2012 and 2012-2013 school years, two students held a freshman down while Student B (the same student who sexually assaulted Doe) covered his hands in icy-hot cream and grabbed the freshman's genitals. (56(a)2 Stmt. ¶ 27.2.)

- *February 2013* – Two members of the football team, one of whom had earlier been arrested for felony robbery, were arrested for the sexual assault of two 13-year-old girls. Both were expelled and later pleaded guilty. (56(a)2 ¶ 63.)

## C. Procedural History

Doe filed this suit on March 27, 2015 against the Torrington Board of Education and eight Board employees. His complaint alleged seven state law claims and seven federal claims. (ECF No. 22.) Defendants moved to dismiss. (ECF Nos. 23, 28.) I granted defendants' motions on March 31, 2016, holding that Doe failed to allege sufficient facts to proceed on any of his federal claims and declining to exercise supplemental jurisdiction over his remaining state law claims. (ECF No. 75.)

Defendants filed a motion for reconsideration in light of new evidence the following month. (ECF No. 79.) I granted the motion in part and allowed Doe to file a second amended complaint with respect to one federal law claim against Daniel Dunaj. (ECF No. 90.) I also allowed Doe to re-plead all of the state law claims over which I had previously declined to exercise supplemental jurisdiction. (*Id.*)

Doe filed his second amended complaint on December 8, 2016, stating seven state law claims against the Administrative Defendants: (1) negligence (Count Two); (2) negligent hiring, retention, and supervision (Count Three); (3) intentional infliction of emotional distress (Count Four); (4) negligent infliction of emotional distress (Count Five); and (5)–(7) statutory violations based on sex and disability discrimination (Counts Six through Eight). (ECF No. 91.) Doe subsequently withdrew Counts Six through Eight. (ECF Nos. 99 at 37; 100 at 2, n.2.) The Administrative Defendants moved to dismiss the remaining counts, arguing that they were entitled to governmental immunity and that Doe had failed to state a claim for relief. (ECF Nos. 96.) I found that Doe had failed to state a claim for intentional infliction of emotional distress, but that he had stated negligence claims against the Administrative Defendants under the identifiable victim, imminent harm exception to governmental immunity. Discovery closed on July 30, 2017 (ECF No. 130), and the Administrative Defendants filed their answer to the surviving claims on August 28, 2017. (ECF No. 133.) They moved for summary judgment on January 11, 2018. (ECF No. 137.) Before responding to the Administrative Defendant's motion, Doe filed a motion for discovery sanctions under Fed. R. Civ. P. 37. (ECF No. 142.) He filed his opposition to the motion for summary judgment on January 31, 2018. (ECF No. 146.)

## II.  Motion for Sanctions

Doe seeks sanctions under Fed. R. Civ. P. 37 on three grounds. First, he argues that the Torrington Board of Education designated Cheryl Kloczko as its representative deponent under Fed. R. Civ. P. 30(b)(6), but that she was "egregiously unprepared" to testify about the topics included in Doe's Notice of Rule 30(b)(6) Deposition. (ECF No. 143 at 3-9.) Second, he argues that each defendant (except Michael McKenna) destroyed notes and documents related to Doe's claims. (*Id.* at 9-22). Finally, he claims that the Defendants failed to disclose that Nick Teodosio, a non-party assistant coach of the football team, was aware of an assault that allegedly occurred in the football locker room. Doe argues that the appropriate sanction for these transgressions is an entry of default judgment in his favor. Default judgment "is a drastic remedy that should be imposed only in extreme circumstances, . . . usually after consideration of alternative, less drastic sanctions." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (internal quotation marks omitted). If the Court refuses to grant default judgment, Doe "reserves his right to seek adverse inferences . . . sufficient to deny defendants' dispositive motions, and later by the trier of fact." Doe's motion fails for three reasons.

### A. Doe's Motion Does Not Comply with Applicable Rules

First, Doe's motion for sanctions does not comply with the requirements of Federal Rule of Civil Procedure 37 or Local Rule 37(a). Federal Rule of Civil Procedure 37 requires parties to certify that "the movant has in good faith conferred or attempted to confer with the party failing to act" before filing a motion to compel disclosure. Fed. R. Civ. P. 37(d)(1)(B). Local Rule of Civil Procedure 37(a) extends the meet-and-confer requirement further. It states that "*[n]o motion pursuant to Rules 26 through 37, Fed. R. Civ. P. shall be filed unless counsel making the motion has conferred . . . with opposing counsel and discussed the discovery issues between them in detail in a good faith effort to eliminate or reduce the area of controversy . . . .*" (emphasis added).

Counsel for both Dunaj and the Administrative Defendants state that Doe's counsel did not confer about this specific issue before filing his motion. (ECF No. 145 at 2; ECF No. 146 at 3.) Doe's counsel makes only the vague statement that "[t]hroughout this litigation, [she] conferred with opposing counsel and discussed discovery issues contained herein in detail . . ." and refers to other discovery disputes resolved "with intervention by this Court." (ECF No. 143 at 1 n.1.) She does not certify that she discussed her motion with opposing counsel before filing. As a result, she fails to satisfy the requirements of the Rule 37 or Local Rule 37(a).[4]

### B. Doe Fails to Show that Defendants Destroyed Relevant Evidence After They Had Notice of Possible Litigation

Second, Doe fails to articulate a reasonable basis for imposing sanctions for spoliation of evidence on any defendant, with the possible exception of Defendant Kloczko. Defendant Dunaj discarded documents in his office in "December 2012 to January 2013" (ECF No. 143 at 13), long before any defendants had reason to believe Doe would bring a lawsuit; Defendant Creedon disposed of her notes related to bullying at the end of each school year except in cases that she expected would "require some further attention." (*Id.* at 14-15.) Defendant Mojica denies that he took notes related to the events in the complaint. (*Id.* at 16.) Defendant McSpiritt provided some notes, but indicated that others were "lost" at some unspecified time or given to other defendants in the case. (*Id.* at 16.) In short, there is nothing to suggest that any of these defendants destroyed or disposed of notes or other documents after Doe filed his initial complaint with the Commission on Human Rights and Opportunities ("CHRO") on October 3, 2014. (ECF No. 143 at 11.)

---

[4] While I use a discovery dispute procedure that does not ordinarily entail the filing of motions, even that procedure requires a good faith certification regarding efforts to confer. *See* http://ctd.uscourts.gov/sites/default/files/Discovery%20Dispute%20Instructions%20%28for%20 website%29%20-%20Revised%202.3.17.pdf

Moreover, most of the events for which Defendants failed to preserve notes related to instances of bullying against others and did not directly concern Doe. I cannot enter default judgment against the Defendants for failing to anticipate the sweeping scope of discovery in this case, which has embraced events occurring years before the Defendants had notice that Doe would commence litigation.

With respect to Defendant Kloczko, Doe points to statements indicating that she destroyed all documents in her possession when she retired in June 2015, months after Doe filed his CHRO complaint. Under Fed. R. Civ. P. 37(e), however, a Court may not impose sanctions as severe as an adverse inference or default judgment unless the party that failed to preserve documents "acted with the intent to deprive another party of the information[]" in those documents.[5] Doe does not argue that Kloczko acted with such intent, and has pointed to no evidence suggesting that she did. The description that Doe provides suggests that she was, at most, negligent. As a result, it is unlikely that Kloczko acted with sufficient culpability to warrant an adverse inference, let alone default judgment. In any event, because I rule in Doe's favor on the Administrative Defendants' motion for summary judgment without drawing any adverse inferences on the basis of the missing notes, I need not determine at this point whether any adverse inference is warranted due to Kloczko's conduct. Doe may file a motion in limine before trial to renew his argument with respect to the notes that Kloczko disposed of when she retired. Any such motion would need to

---

[5] Fed. R. Civ. P. 37(e) applies only to electronically stored information. I therefore maintain discretion under the rules to impose sanctions up to and including default for spoliation of physical evidence even without a showing of intent. Nevertheless, Rule 37(e) was adopted in December 2015, well in advance of most of the discovery in this case, and provides persuasive authority for the proposition that draconian sanctions such an adverse inference or default judgment are appropriate only for severe discovery violations accompanied by a culpable state of mind.

demonstrate not only that an adverse inference is warranted, but also that it would not be unduly prejudicial to the other defendants.

### C. Doe's Motion is Untimely

Third, the procedural history in this case weighs against imposing the requested sanctions. Doe filed the motion for sanctions on January 12, 2018 (ECF No. 143), the day after the Administrative Defendants filed their motion for summary judgment (ECF No. 137), and more than five months after the close of fact discovery. (*See* ECF No. 114) (granting an extension of discovery until July 30, 2017). The motion largely rehashes arguments raised in an earlier motion, filed the day after discovery closed, requesting additional time for discovery. (ECF No. 120.) Like the present motion for sanctions, Doe's earlier motion argued that the Administrative Defendants had failed to designate an adequately prepared witness under Rule 30(b)(6). (ECF No. 120 at 9.) The Rule 30(b)(6) deposition was necessary, he asserted, because defendants had destroyed documents relevant to his claims. (*Id.*) If these problems are sanctionable now, they were equally sanctionable when Doe first described them to the Court. I denied that motion, however, and noted,

> Additional time for discovery would not significantly advance the case, would not be proportionate to the needs of the case, and would not promote the just, speedy, and inexpensive determination of this action. The parties have already conducted extensive discovery over at least 14 months in this case. Plaintiff has taken 15 depositions and engaged in written discovery over that time period, and, especially in light of the fact that the Court has already extended the scheduling order, has not made an adequate showing of diligence to warrant the extra time requested.

(ECF No. 130.)

Nevertheless, over five months later, Doe asks the court to enter default judgment for the same conduct that I previously found did not even warrant extending discovery. The Federal Rules of Civil Procedure provide an avenue for a plaintiff to avoid summary judgment if his inability to demonstrate the existence of a material fact was caused by a defendant's recalcitrance. *See* Fed.

R. Civ. Pro. 56(d). But Doe has not made the showing required by Rule 56(d), and I am, in any event, denying summary judgment in this ruling based on the conflicting evidence in the record. Finally, it is far too late in the case, to retread old discovery disputes, *see Lore v. City of Syracuse*, 670 F.3d 127, 174 (2d Cir. 2012) (upholding a district court's denial of default judgment as untimely when the plaintiff filed her motion for sanctions long after she became aware of the alleged discovery violations and shortly before trial), and Doe has not shown how he has been prejudiced by the alleged failure to comply with Fed. R. Civ. P. 30(b)(6).

Doe's third argument for sanctions relates to a deposition that I allowed after the close of discovery. (ECF No. 130) (granting additional time for Doe to depose Student H). Student H attested that he had told assistant coach Nick Teodosio about an assault in the football locker room, and that Teodosio said he would tell Dunaj. Doe relies on Student H's statement to argue that the Defendants should be sanctioned because they did not identify Teodosio in response to an interrogatory requesting "[t]he names of any . . . employee . . . known to you, who learned of, observed, witness, had or claimed to have knowledge" of any assault or bullying. (ECF No. 143-14 at 3.) This argument is untimely and without merit. First, Student H's deposition was conducted on September 7, 2017, more than four months before this motion was filed. Doe waited until Defendants had already filed their motion for summary judgment before asking the Court to draw an adverse inference in ruling on that motion, and he offers no explanation for the delay. Moreover, Doe does not explain how Student H's recollection of Teodosio's hearsay statement requires a default judgment against all Defendants on all counts. Indeed Doe does not provide a sufficient basis to conclude that the Defendants were aware of Teodosio's alleged knowledge of events, let alone that they acted in bad faith. Student H's testimony thus does not provide a basis for the requested sanctions.

### III. Motion for Summary Judgment

#### A. Summary Judgment Standard

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (internal quotation marks and citations omitted). "In making that determination, a court must view the evidence in the light most favorable to the opposing party." *Id.* (quotation marks omitted). On summary judgment a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011).

#### B. Immunity Defenses

The Administrative Defendants assert four distinct reasons that they are immune from liability in this case. First, they argue that Connecticut's doctrine of sovereign immunity bars Doe's claims. (ECF No. 137-1 at 13-14). Second, they claim that they are entitled to statutory immunity under Conn. Gen. Stat. § 10-222*l*, a statute related to claims of school bullying. (ECF No. 137-1 at 14-19.) Third, they assert that they are immune from liability for the acts or omissions of someone other than an employee, officer, or agent of the municipality under Conn. Gen. Stat. § 52-557n(b)(6). (ECF No. 137-1 at 19-20.) Finally, they claim they are entitled to governmental

immunity under the common law and Conn. Gen. Stat. § 52-557n(a)(2)(B). (ECF No. 137-1 at 20-29.)

The Administrative Defendants raise their first three immunity defenses for the first time in their motion for summary judgment.[6] Federal Rule of Civil Procedure 8(c) requires parties to raise affirmative defenses in the pleadings. "Most immunities are affirmative defenses." *In re Stock Exchanges Options Trading Antitrust Litig.*, 317 F.3d 134, 151 (2d Cir. 2003) (collecting authorities describing absolute immunity, statutory immunity, and common law immunity as affirmative defenses that must be pleaded under Rule 8(c)). Nevertheless, "failure to plead an affirmative defense does not necessarily result in waiver." *Rose v. AmSouth Bank of Fla.*, 391 F.3d 63, 65 (2d Cir. 2004). "[A] district court may still entertain affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003). Doe responded to the merits of the Administrative Defendants' immunity arguments, but he did not argue that these defenses were waived or that considering them now would cause undue prejudice. (ECF No. 151.) As a result, I consider each immunity defense in turn.

### 1. Common Law Sovereign Immunity

Defendants first argue that they are immune from suit under Connecticut's doctrine of sovereign immunity. (ECF No. 137-1 at 13-14.) "The doctrine of sovereign immunity is a rule of

---

[6] The Administrative Defendants mentioned § 10-222*l* in passing and applied it to one defendant in their motion to dismiss the First Amended Complaint in this case. (ECF No. 23-1 at 3-4.) I dismissed that complaint on other grounds (ECF No. 75), but later granted Doe's motion for reconsideration and allowed him to file his Second Amended Complaint. (ECF No. 90.) Defendants did not raise any argument based on § 10-222*l* in their motion to dismiss the Second Amended Complaint (ECF No. 96), or in their answer (ECF No. 133).

common law that operates as a strong presumption in favor of the state's immunity from liability or suit." *Envirotest Sys. Corp. v. Comm'r of Motor Vehicles*, 293 Conn. 382, 387–88 (2009). "[B]ecause the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state." *Miller v. Egan*, 265 Conn. 301, 313, 828 A.2d 549, 558 (2003). A board of education and its employees may be entitled to sovereign immunity "when [they] perform those duties delegated to [them] by the state." *Bd. of Educ. of City of New Haven v. City of New Haven*, 237 Conn. 169, 181 (1996). In contrast, when a board of education acts as a municipal agent, it is only entitled to more limited governmental immunity. *Heigl v. Bd. of Educ. of Town of New Canaan*, 218 Conn. 1, 4 (1991). Defendants argue that, because Connecticut has passed a statute requiring local boards of education to develop plans to address bullying in schools, they were acting as agents of the state when they implemented anti-bullying plans. Conn. Gen. Stat. § 10-222d. Therefore, they are immune from liability for the conduct alleged in the complaint relating to their response to bullying.

Defendants' argument is contrary to the statutory scheme on which it relies. "The state action mandated by § 10-222d begins and ends with the development, implementation, submission, and assessment of the [anti-bullying] policy." *Palosz v. Town of Greenwich*, No. 40315, 2018 WL 3826598, at *5 (Conn. App. Ct. Aug. 14, 2018). If a board of education and its employees fail to follow the policy, however, they may be held liable without "control[ling] or interfere[ing] with the activities of the state." *Id.* As a result, boards of education and their employees do not enjoy immunity from all suits alleging a failure to prevent harm from bullying. This conclusion is buoyed by a statutory provision granting *qualified* immunity for boards of education and their employees related to bullying. Conn. Gen. Stat. § 10-221*l*. That section

provides limited immunity for school boards and officials who implement the anti-bullying policies required by § 10-222d in good faith. *Id.* As the Connecticut Appellate Court recently concluded

> [T]here would have been no need for the legislature to create a limited statutory immunity for local boards of education [under § 10-222*l*(c)] if those boards already were protected by sovereign immunity. This is particularly true given that § 10-222*l* was adopted in 2011, nine years after § 10-222d was first enacted, and after a number of conflicting decisions had been rendered in the Superior Court. . . . It makes more sense that the legislature concluded instead that § 10-222*l* was necessary because local boards of education are not protected by sovereign immunity when their employees fail to comply with an antibullying policy.

*Palosz*, 2018 WL 3826598, at *6. The same point applies to employees of a local board of education by virtue of the qualified immunity afforded them by Conn. Gen. Stat. § 10-222*l*(a). The record in this case shows that the Torrington Board of Education promulgated a policy pursuant to § 10-222d in December 2010. (56(a)1 Stmt. ¶ 28). As shown below, there are factual disputes about whether the Administrative Defendants responded to bullying in good faith and in accordance with the policy. (56(a)2 Stmt. ¶ 28.1–.7). As a result, sovereign immunity does not bar Doe's claims.

### 2.  Statutory Immunity under Conn. Gen. Stat. § 10-222*l*

The Administrative Defendants next argue that they are statutorily immune under Conn. Gen. Stat. § 10-222*l*. That statute creates a limited safe harbor from liability for claims relating to bullying for both boards of education (under subsection (c)) and school employees (under subsection (a)).  The statute provides

> No claim for damages shall be made against a school employee . . . who reports, investigates and responds to bullying. . . in accordance with the provisions of the safe school climate plan . . . if such school employee was acting in good faith in the discharge of his or her duties or within the scope of his or her employment. The immunity provided in this subsection does not apply to acts or omissions constituting gross, reckless, wilful or wanton misconduct.

Conn. Gen. Stat. § 10-222*l*(a). The language for school boards is different, though conveys similar requirements:

> No claim for damages shall be made against a local or regional board of education that implements the safe school climate plan, described in section 10-222d, and reports, investigates and responds to bullying . . . if such local or regional board of education was acting in good faith in the discharge of its duties. The immunity provided in this subsection does not apply to acts or omissions constituting gross, reckless, wilful or wanton misconduct

Conn. Gen. Stat. § 10-222*l*(c).

The mere existence of a bullying policy is not enough to shield the Administrative Defendants from liability. Rather, they must also show that they reported, investigated, and responded to bullying *in accordance with the safe school climate plan*. Conn. Gen. Stat. § 10-222*l*(a) (limiting liability if the employee acts "in accordance with the provisions of the safe school climate plan"); Conn Gen. Stat. § 10-222*l*(c).[7] Although they do describe several instances in which they responded to bullying incidents involving Doe, the Administrative Defendants never once state that their responses were consistent with the safe school climate plan. (*See, e.g.*, ECF No. 137-1 at 17-19) (listing bullying incidents and responses without stating whether those responses conformed to the safe school climate plan). As a result, they have failed to carry their burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing

---

[7] The immunity provision for school boards is phrased slightly differently than the one for school employees. *Compare* Conn. Gen. Stat § 10-222*l*(a), *with* Conn. Gen. Stat. § 10-222*l* (c). Specifically, subsection (a) requires the employees to act "in accordance with" the school climate plan, while subsection (c) requires the board the "implement" the plan. Subsection (c) also requires the board to "report[], investigate[], and respond[]" to bullying and to act "in good faith" in the discharge of its duties. The parties to not raise any arguments about these distinctions and they do not appear to be material to the resolution of this motion. *See Palosz*, 2018 WL 3826598 at *2 n.8 (noting that the trial court had erroneously relied on subsection (a) to analyze a school board's immunity, but concluding that the error was "ultimately immaterial").

the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.")

In contrast, Doe has pointed to specific evidence supporting an inference that the safe school climate plan was not yet in place when much of the bullying occurred. (56(a)2 Stmt. ¶ 28.3–.5). Specifically, he points to statements made by Defendant Kloczko indicating that it took at least three years to implement the 2010 bullying policy adopted by the board. *Id.* He also points to statements by Defendant Creedon suggesting that portions of the policy were not in force until 2013. (56(a)2 Stmt ¶ 29). On balance, there is sufficient evidence in the record to raise a genuine dispute of fact over whether the safe climate policy was in place and whether the Administrative Defendants adhered to it between 2011 and 2013. As a result, the Administrative Defendants are not entitled to summary judgment based on immunity under Conn. Gen. Stat. § 10-222*l.*

### 3. Immunity for the Acts and Omissions of Third Parties under Conn. Gen. Stat. § 52-557n(b)(6)

The Administrative Defendants next contend that they "cannot be held liable for the criminal conduct of [the student who sexually assaulted Doe]." (ECF No. 137-1 at 20) (citing Conn. Gen. Stat. § 52-557n(b)). As the Connecticut Supreme Court has explained, though, the "rejection of the notion of immunity for teachers and their municipal employers when their negligent supervision allowed students to harm themselves or each other is one of the few clear manifestations of legislative intent that emerges from the murky legislative history of the municipal liability section of the Tort Reform Act of 1986 [§ 52-557n]." *Elliott v. City of Waterbury*, 245 Conn. 385, 399 (1998). Accordingly, the Administrative Defendants are not

immune from liability simply because Doe was a harmed by a student rather than by these defendants directly.

### 4. Governmental Immunity under the Common Law and Conn. Gen. Stat. § 52-557n(a)(2)(B)

The Administrative Defendants hinge their final immunity argument on Conn. Gen. Stat. § 52-557n(a)(2)(B) and the common law doctrine of governmental immunity for discretionary acts.[8] Municipal boards of education have statutory immunity for "negligent acts or omissions which require the exercise of judgment or discretion as an official function of [governmental] authority," Conn. Gen. Stat. § 52-557n(a)(2)(B), while municipal officials, such as the Administrative Defendants, are "immune from liability for negligence arising out of their discretionary acts" to avoid chilling the exercise of governmental discretion. *Coley v. City of Hartford*, 312 Conn. 150, 161 (2014) (quotation marks omitted).[9] "An exception to this immunity exists—and [municipal employees] are exposed to possible liability—when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm." *Doe v. Petersen*, 279 Conn. 607, 609 (2006) (internal quotation marks and alteration omitted). To bring the case within the "identifiable victim/imminent harm" exception, Doe must establish, for each defendant, "three things: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." *Strycharz v. Cady*, 323 Conn. 548, 573

---

[8] As the Administrative Defendants acknowledge, at least one Connecticut trial court has concluded that the immunity afforded school boards and school employees under § 52-557n has been superseded by § 10-222*l*. (ECF No. 137-1 at 21 n.3) (citing *Denny v. Town of Hamden Bd. of Educ.*, No. CV146047401, 2017 WL 3975291, at *3 (Conn. Super. Ct. Aug. 1, 2017)). Although that court's reasoning is compelling, Doe has not made this argument and I do not consider it here.

[9] I have previously held that the acts and omissions alleged in this case were discretionary (Ruling on Renewed Motion to Dismiss, ECF No. 75.) The parties have offered no reason to reconsider that issue on summary judgment.

(2016) (quotation marks omitted). "The ultimate determination of whether governmental immunity applies is ordinarily a question of law for the court unless there are unresolved factual issues material to the applicability of the defense[,] in which case resolution of those factual issues is properly left to the jury." *Id.* at 574 (quotation marks and alterations omitted).

### a. Imminent Harm

The Administrative Defendants argue that they could not have known Doe was subject to imminent harm. In particular, they claim that Doe and his mother failed to report bullying incidents as they occurred and initially refused to name his harassers. Their argument is better directed at the third prong of the test—determining whether the Defendants actually knew or should have known about the risk. The issue for the first prong is "*the magnitude of the risk* that the conditions created"—i.e., "whether it was apparent to the municipal defendant that the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm." *Haynes v. City of Middletown*, 314 Conn. 303, 323 (2014). As I explained in denying Defendants' motion to dismiss, "although the harassment of Doe allegedly occurred over a period of two years and in different locations, the magnitude of the risk associated with repeated beatings was sufficient to create an imminent harm." (ECF No. 125 at 15-16.) The record contains ample evidence to establish genuine issues of fact about the harm that Doe faced. For example, Doe described an incident in which he was locked inside of a locker and held there by football players for 10 to 15 minutes. (56(a)2 Stmt. ¶ 38.) He noted that he was hit repeatedly by certain students on a daily basis (*Id.* ¶ 42.) On one occasion, he testified, a student shoved him to the ground and threw rocks at him; one entered his mouth and he swallowed it. (56(a)1 Stmt. ¶ 12.) On another occasion, he was shoved up against a fence, punched repeatedly, and had his shirt ripped. (56(a)2 Stmt. ¶ 69.) Student A corroborated Doe's account of frequent harassment in his deposition. (ECF No. 158-15 at 20.) Overall, the record contains enough evidence of a pattern of

serious physical and emotional abuse to create a triable issue of fact as to whether Doe faced imminent harm.

Doe also points to serious incidents involving the football team that put the Administrative Defendants on notice about the magnitude of the risk of harm that freshman members of the football team and other vulnerable students such as Doe faced at the hands of certain senior members of the football team. While Doe attended THS, four members of the football team were reportedly arrested for sexual assault. (56(a)2 Stmt. ¶¶ 39, 63.) One of those students conspired with three more football players to commit felony robbery by jumping two 13-year-old boys. (*Id.* ¶ 48.) The record also contains evidence suggesting that the Administrative Defendants became aware of a hazing ritual where the freshman quarterback was forced to choose between sucking the toes of upperclassmen or having an eraser inserted into his rectum. (56(a)2 Stmt. ¶¶ 25.1, 25.9.) In an incident reported to Defendant McSpiritt, Doe himself was bullied in the football locker room. (56(a)2 Stmt. At ¶¶ 35-36.) Viewed in the light most favorable to Doe, the record shows that Administrative Defendants had notice that Doe, a frequent target of reported bullying, faced imminent harm at the hands of THS football players without adequate intervention.

### b. Identifiable Victim

Administrative Defendants next contend that Doe was a member of a class of identifiable victims only when he "was under the care and custody of" the Defendants, not when he was off campus. They do not point to anything in the record to support their contention, relying instead on legal arguments about the scope of liability for off-campus conduct. The Connecticut Supreme Court has held that "school officials may be held liable for injuries occurring off school grounds if the officials' negligence on school property was the proximate cause of the injuries." *Strycharz*, 323 Conn. at 578. Although the most traumatic incident that Doe describes occurred in a public

park, the record shows that school employees were aware that football players gathered after practice to play unofficially. (James Burns Dep., ECF No. 158-15 at 183.) The parties dispute whether the incident occurred over summer break or during the football season after practice. (56(a)1 Stmt. ¶ 14 ("While on summer break . . . plaintiff was assaulted by DT."); 56(a)2 Stmt. ¶ 14 ("[T]he assault occurred after football practice on a date in August during the Football season.").) The record also shows that the Administrative Defendants knew that Student B (who would later be convicted of the sexual assault against Doe) had previously participated in the sexual hazing incident (56(a)2 Stmt. ¶¶ 25.14, 25.18, 26), and that Student B and Doe both attended summer football practice. (Burns Depo., ECF No. 158-15 at 182-83.) While the Administrative Defendants may not be held liable for failing to supervise students at the park, *Strycharz*, 323 Conn. at 583, they may be liable if their on-campus conduct caused the assault. *Id.* at 580. The Administrative Defendants do not point to anything in the record that would allow me to conclude that their conduct did not cause the incident as a matter of law. Specifically, viewing the record in the light most favorable to the plaintiff, a reasonable jury could conclude that (1) Doe was a frequent target of severe bullying by members of the football team; (2) the Administrative Defendants failed to intervene to prevent members of the football team from harassing and assaulting Doe; (3) the Administrative Defendants knew or should have known that their failure would expose Doe to continued assaults; (4) assaults by members of the football team included sexual assault, and specifically, sexualized hazing where upperclassmen inserted foreign objects into freshmen players' rectums; and (5) Student B, who sexually assaulted Doe, had previously participated in a sexual hazing incident. (56(a)2 Stmt. ¶¶ 25.14, 25.18, 26.) The fact that the ultimate assault occurred off campus does not foreclose an inference that it was caused by the Administrative Defendants' failure to intervene on campus during school hours.

Further, Doe's claims do not turn exclusively on the single instance of sexual assault. Rather, he alleges that he suffered persistent physical and verbal bullying that caused him pain and emotional distress. (*See* ECF No. 91 ¶¶ 151-53.) Many of the incidents of bullying that he described in his deposition occurred on school property or under school supervision. (*E.g.*, ECF No. 158-15 at 46-47, 48, 50, 75-76.) The Administrative Defendants do not appear to contend that the on-campus bullying that Defendant endured was insufficient to support his claim for damages as a matter of law. Considered in the light most favorable to Doe, there is sufficient evidence to raise a genuine issue of fact regarding whether he was an identifiable victim.

### c. Public Official to Whom It Is Apparent that His or Her Conduct Is Likely to Subject That Victim to Harm

Finally, the Administrative Defendants argue that the identifiable victim-imminent harm exception does not apply because there is insufficient evidence to demonstrate that they were aware of the particular imminent harm that Doe faced. *See Strycharz*, 323 Conn. at 573 (noting that the identifiable victim-imminent harm exception only applies where it is "apparent that [the municipal employee's] conduct is likely to subject that victim to that harm"). Their argument is unsupported by the record. The Administrative Defendants list incidents from the complaint where they contend they were not informed in time to respond or where they believe their responses were adequate. (ECF No. 137-1 at 16-19, 25.) For example, they claim that an "alleged assault by [Student B] was not reported to these defendants," and that "[a]lleged daily assaults by students who punched plaintiff in the arm were not reported until April, 2013." (ECF No. 137-1 at 25.) They provide no citation to the record to identify the incidents to which they refer, and they do not contend that either occurred off campus or after hours. Nevertheless, they ask, "[H]ow was it to be apparent to defendants that plaintiff was in imminent danger, and from what danger?" (*Id.* at 25-26.) Their question is a good one, but it is one for a jury to decide.

For his part, Doe has pointed to sufficient evidence in the record to permit a jury decide the issue. For example, Doe's mother stated in her deposition that she reported several incidents of bullying, but the school kept no record of her reports. (*E.g.*, 56(a)2 Stmt. ¶ 10; 11; 12.) Further, even the Administrative Defendants acknowledge that Doe and his mother repeatedly reported instances of bullying to them in which Doe refused to name his tormenters out of fear of retaliation. (56(a)1 Stmt. ¶¶ 16-18.) The Administrative Defendants suggest that the failure to identify the bullies relieved them of any duty to protect Doe, but cite no authority for that proposition. In spite of that failure, it remains for a jury to decide whether the Administrative Defendants had enough information to take meaningful action to protect Doe given that (1) Doe and his mother repeatedly complained of bullying; (2) some of the Administrative Defendants were aware that Doe had already been attacked in the football locker room; and (3) the Administrative Defendants were aware of other incidents of serious misconduct by members of the football team, including the targeting of freshmen players and other vulnerable students.

The Administrative Defendants also suggest that the record does not show that each of them was *individually* aware of imminent harm. (ECF No. 137-1 at 3.) ("Although plaintiff has sued several individual defendants, when it comes to specific acts or omissions relating to liability, the complaint consistently refers to the generic 'Defendant' or 'Defendants' without further specification as to what each individual allegedly did, or did not, do that allegedly renders him or her subject to liability in negligence.") But they do not identify the specific defendants for whom they believe evidence is lacking. Apart from summarizing the allegations against each defendant, their argument deals with the defendants only as a group. *E.g.*, (ECF No. 137-1 at 15) ("[T]hese defendants are immune from liability . . . ."); (*id.* at 16) ("[T]hese defendants did in fact investigate . . ."); (*id.* at 24 ("[T]hese defendants were not timely informed . . ."); (*id.* at 27) ("[I]t cannot be

said that the danger to which plaintiff allegedly was subjected was "apparent" such that the defendants has [sic] a clear and unequivocal duty to act."). They have thus failed to satisfy their burden here:

> "The argument that [Doe] has not produced evidence would have force at trial, or in other circumstances where the plaintiff bears the burden of proving every essential element of its claim. However, on a motion for summary judgment, it is the moving party's burden to show in its motion papers 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(a). Thus, when a defendant moves for summary judgment, it is the *defendant* who must show entitlement, notwithstanding that, at trial, the plaintiff will have the burden of proving every element of its claim."

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 115 (2d Cir. 2017). Upon my review of the record, I find that Doe has identified some evidence record implicating each Administrative Defendant.[10] I cannot weigh that evidence at the summary judgment stage, and, especially given the absence of particularized briefing, it is not my responsibility to sift the record for evidence as to each defendant. *See Amnesty America v. Town of West Hartford*, 288 F.3d 467, 470-71 (2d Cir. 2002) ("[B]ecause nothing in the federal rules mandates that districts courts conduct an exhaustive search of the entire record before ruling on summary judgment, district courts are entitled to order litigants to provide specific citations."). The Administrative Defendants have therefore failed to show the absence of material fact about the applicability of their governmental immunity defense.

### C. Evidence of Liability

---

[10] *See, e.g.*, (56(a)2 Stmt. ¶¶ 23, 66 (implicating Dziekan); *id.* ¶¶ 11, 22 (implicating Kloczko); 56(a)2 Stmt. ¶ 4, 6, 8.2, 17, 58, 21 (implicating McSpiritt); *id.* ¶¶ 8.1, 15, 16, 52, 17 (implicating DeZurik); *id.* ¶¶ 17, 17.2, 58 64 (implicating Carbone). The Board is also implicitly responsible for the conduct of its employees and agents, including the other Administrative Defendants.

The Administrative Defendants assert that "plaintiff's discovery has adduced insufficient admissible evidence to support liability as to these defendants." But the entirety of their opening and reply briefs are dedicated to their immunity arguments. "[S]ummary judgment is highly unusual in a negligence action where the assessment of reasonableness generally is a factual question to be addressed by the jury." *King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997). Reading between the lines of their argument, it appears that the Administrative Defendants contend that the record demonstrates that they were not negligent because there is evidence that they did respond to some of Doe's reports of bullying. (*See* ECF No. 137-1 at 24) ("There can be no dispute that those events that were reported were addressed, albeit not to plaintiff's satisfaction."). I cannot conclude that the Administrative Defendants' responses were adequate as a matter of law. For example, in the fall of 2012, Doe's mother "raised the issue of bullying" in a meeting with Defendant Carbone.[11] "[A]lthough plaintiff refused to name bullies, his special education case manager, Carbone spoke with plaintiff's teachers and asked them to be observant as to interactions between plaintiff and other students." (ECF No. 137-1 at 18.) Thus, Carbone arguably "addressed" the issue. But a reasonable jury could still conclude that, given Carbone's position and the severity of the bullying of which he was or should have been aware, the situation called for a more vigorous response. Particularly without any argument from the Administrative Defendants on the issue, this is not one of the "highly unusual" cases warranting summary judgment on Doe's negligence claim.

## IV.    Conclusion

---

[11] Doe asserts that the meeting was intended to address "the severe and ongoing patterns of bullying, sexual harassment, and retaliation by students and the impact of this bullying on the plaintiff." 56(a)2 Stmt. ¶ 17.1.

For the reasons stated above, Doe's Motion for Sanctions is DENIED and the Administrative Defendants' Motion for Summary Judgment is DENIED.


IT IS SO ORDERED.

                                                  _____/s/_____
                                                  Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                September 20, 2018